97 So.2d 435 (1957)
STANDARD MOTOR CAR COMPANY et al., Plaintiffs-Appellants,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant-Appellee.
No. 4456.
Court of Appeal of Louisiana, First Circuit.
October 4, 1957.
N. Cleburn Dalton, Baton Rouge, for appellants.
Haynes, Mathews & Lane, Baton Rouge, for appellee.
TATE, Judge.
Plaintiffs appeal from judgment dismissing their suit upon exception of no right and cause of action.
*436 The petition alleges: A car left by a customer of the plaintiff, Standard Motor Car Company, Inc. ("Standard"),[1] for servicing was involved in an intersectional collision while being road-tested by Standard's employee in the course and scope of his employment. The negligence of a driver insured by defendant, State Farm Mutual Insurance Company, was the sole proximate cause of the accident. Standard paid for repair of the damages and by this tort suit seeks recovery of same from the insurer of the tortfeasor.
Defendant contends that, in the absence of a conventional subrogation by the owner of the damaged car in favor of Standard, Standard as possessor has no right or cause of action for the damage caused to its customer's car, even though Standard paid for the repair of same. This contention is based upon the doctrine that "subrogation will not generally be decreed in favor of a mere volunteer or intermeddler who, without any duty, moral or otherwise, pays the debt or discharges the obligation of another," 50 Am.Jur. 696, "Subrogation", Section 21. See also 83 C.J.S., Subrogation § 9, p. 601. See LSA-Civil Code Article 2161, especially 2161(3).
Able counsel for defendant argues that Standard was a "volunteer" since, as depositary or bailees of its customer's car, it was not legally liable to its customer for damages caused through the negligence of another and without fault on its own part. See cases such as Niagara Fire Insurance Co. v. Shuff, La.App. 1 Cir., 93 So.2d 325. "The depositary is only bound to restore the thing in the state in which it is at the moment of restitution. Deteriorations, not effected by an act of his, are to the loss of the depositor." Article 2945, LSA-C.C. (Italics ours.)[2]
Plaintiffs urge most forcefully that the garageman is at least under a moral duty to repair the cars of his customers injured while in his custody. It is argued that the garageman cannot morally or as a matter of sound business practice return his customer's car to the latter in a damaged condition with the observation that it is up to the customer to collect for the loss from an allegedly negligent third party. We are reminded that the garageman, as depositary or bailee, is under a duty to return the car deposited with him in the same condition as received, and that as between him and his customer, the depositorinjury to the car during the garageman's custody establishes a prima facie case in favor of the customer against the garageman. Hazel v. Williams, La. App. 2 Cir., 80 So.2d 133; Articles 1908, 2937, 2938, 2944, 2945, LSA-Civil Code. The garageman thus has at least a prima facie duty to repair the vehicle damaged while in his custody before returning it to his customer. Furthermore, should he refuse to repair the vehicle on the ground that the damages resulted from the negligence of a third party tortfeasor, the prescriptive period applicable to his customer's action against him for the damages to the car, while in the garageman's custody is that of ten years, Article 3444, LSA-C.C., Reehlman v. Calamari, La.App.Orleans, 94 So.2d 311; far longer than the peremptive one year for tort actions during which either party must seek to hold the negligent third person.
The contentions of the plaintiffs-appellants are sustained by the jurisprudence; although in fairness we must add that the authorities cited below were not called to the attention of the learned trial judge.
The identical legal question was before our brethren of the Orleans Court of Appeal *437 in Douglas v. Haro, 32 So.2d 387. Their opinion at 32 So.2d 387 contains a scholarly review of the applicable authorities. As against third persons misappropriating or damaging same, the possessors (such as an administrator, depositary, or consignee) of property damaged or stolen while in their possession, although not owned by them, have been permitted to recover the property or for the damages thereto, irrespective of their non-ownership thereof. Lannes v. Courege, 31 La. Ann. 74; Johnson v. Imboden, 7 La.Ann. 110; Johnson v. Imboden, 4 La.Ann. 178; Fowler v. Cooper, Carathers & Co., 3 La. 215; Morgan v. Bell, 4 Mart., O.S., 615; McGrew v. Browder, 2 Mart., N.S., 17, 20; Klein v. Anderson, 4 Orleans App. 262. But based upon Article 15, C.P., the Orleans Court held in Douglas v. Haro that the depositary or bailee was without interest to institute suit to recover damage to property in his possession, when the sole cause of such damage was the negligence of a third party defendant, who under these circumstances was held to be liable solely to the owner (unless of course a conventional subrogation had been secured).
The Orleans court's decision was, however, reversed by our Supreme Court, 214 La. 1099, 39 So.2d 744, which opinion, in the words of the Supreme Court in a later decision, Holley v. Butler Furniture Co., 217 La. 8, 45 So.2d 747, at page 748,[3] "held that inasmuch as the depositor had ten years in which to file a suit against the plaintiff under the provisions of the Civil Code, and the right of action to recover damages from the defendant was one which prescribed in one year, that the plaintiff was deemed to have an interest to bring such actionbut inasmuch as the depositor had not been made a party remanded for such purpose".
In Douglas v. Haro, above cited, a strong argument had been made by the defendant that there was no allegation that the plaintiff-garageman had paid the owner for the damage to the automobile or that the owner had demanded payment of same from the garageman. In response to this argument, the Supreme Court remanded the case to implead the owner-depositor as a necessary party to settle the rights of all three parties and to prevent the possibility of the garageman being unjustly enriched by recovering the damages to the customer's car although such damages were not demanded of him by the customer. Thus the cited decision might be interpreted so as to require our reversal, but also to require on the remand the impleader of the owner of the damaged automobile as a party to the suit. However, we feel that under the pleadings in this particular case, this requirement would be a useless technicality, since herein (unlike in Douglas v. Haro) the garageman-plaintiff has specifically pleaded that he himself has paid the claim for the damages sustained by the car while deposited with him.
The result we have reached is consistent with the common law principles surrounding a "bailment", which is quite similar in many respects to a civil law "deposit". "A bailee may recover from a third person for the latter's wrongful injury to bailed property or disturbance of his possession thereof," 8 C.J.S. Bailments § 39 b, p. 317. "Every bailee or person clothed with the exclusive right of possession has a temporary or qualified ownership in the property to the extent of enabling him to maintain actions in respect thereof against third persons, as has been shown in § 39, and he may sue for the protection of his own interest, or for the benefit of his bailor, or he may sue for both interests and recover *438 full damages," 8 C.J.S. Bailments § 56, p. 371.[4] See also 6 Am.Jur. 430.
The jurisprudence specifically pertaining to deposit and bailment has thus readily furnished a rationale for this decision. But it is not inappropriate to note that although the garageman in this case may be not subrogated to rights of the customer against the tortfeasor nevertheless he may have acquired by the payment to the creditor (i. e., the owner of the car) a right of action to recover the payment from the person legally obligated for the debt (i. e., the tortfeasor). This arises under Article 2134, LSA-C.C., which provides that the obligation is discharged by payment by another party "no way concerned in it" (i. e., the garageman), even if the latter "act in his own name", although it also provides that the latter "be not subrogated to the rights of the creditor".
While there are no Louisiana cases on the subject the equivalent article of the French Civil Code, CN 1236, was explained in the report of Monsier Jaubert presented to the Tribunal (8 Fenet, Discussions, p. 341-342), in part as follows: "Quoique le tiers qui offre le paiement n' ait pas un intérèt direct et civil à l'acquittement de 1' obligation, le créancier ne pourra non plus refuser de recevoir, puisqu'en dernière analyse le créancier n' a d'autre intèrêt que d'être payé; mais dans ce cas le tiers ne peut forcer le créancier a le mettre a son lieu et place pour les privilèges, les hypothèques et la contrainte par corps. La loi ne veut pas, avec raison, que contre le gré du créancier un tiers vienne s' interposer pour acquérir le droit de vexer le debiteur; le tiers que paie qui paie n'acquiert alors qu'une action simple contre le débiteur qui est entièrement libre de l'obligation primitive."[5]
As was recently stated by one of the main treatises on French Civil law: "Celui qui a effectué un paiment pour le compte d'un tiers sans ne lui ayant donné aucun mandat a cette fin, ne saurait en réclamer le remboursement audit tiers qu'à la condition de prouver l'obligation de celui-ci dans la dette ainsi acquitté par lui,[6] IV Aubry et Rau, Droit Civil Francais (Supplement permanent, p. 1. 1957) Section 316, citing Cass. civ. 13 novembre 1939 (Gaz.Pal.1940, 1, 8 Sir.1940, 1, 27; J.C.P. 40, II, 1956).
Or as stated in Planiol et Ripert, Droit Civil Francais, Tome VII (2, 2 ed, 1954), Section 1150, p. 352: "* * * [U]n tiers quelconque, même non intéressé et agissant *439 de son proper gré, a qualitè pour payer. Mais le tiers qui paie ne peut exiger à son profit le bénéfice de la subrogation de la part du créancier (art. 1236); il ne pourra exercer contre le debiteur que la recours fonde sur la gestion d'affaires ou l'enrichisement sans cause."[7] The footnote to this sentence in the French text is the citation to the decision of the Civil Chamber of the Court of Cassation, Feb. 12, 1939 (D.He 1929 180), in which the court reversed a lower court judgment which had held that the stranger or volunteer could not recover in the absence of a legal or conventional subrogation. See also Cass. req. Feb. 3, 1879 (S. 79.1.365; D.79.1.231), in which by way of dictum, remarking that "Ce principle est incontestable", the court of cassation said: "Le tiers qui a payé la dette d'autrui de ses propres deniers, a, bien que non subroge aux droits du créancier, un recours contre le debiteur (c. civ. 1236.).[8]
See also 2 Baudry-Lacantinerie, Précis De Droit Civil, II (13e Ed.) 149, Section 324 "Recours du tiers qui a payé."
Furthermore, the civil law does not share the hostility of the Anglo-American common law to the "volunteer", and as stated above quite possibly recovery in the present case is allowable under the theory of negotiorum gestio, Articles 2295-2300, LSA-Civil Code, see Comment, "Negotiorum Gestio in Louisiana", 7 Tulane Law Review 254, the quasi-contractual obligation arising from the situation where a person voluntarily manages the business of another without any authorization whatsoever.
The action of the garageman in repairing the damage to its customer's automobile might be considered to be in satisfaction of the third party tortfeasor's obligation to the customer for the damage to the latter's car, and therefore an act of negotiorum gestio as to said third party defendant tortfeasor herein. For all that is required for an instance of negotiorum gestio is that one person (the gestor) manage, of his own accord, the "affair" of another (the principal) LSA-Civil Code, Article 2295. The garageman attended to the "affair" of the defendant herein when he fulfilled defendant tortfeasor's obligation to the owner of the car existing by reason of his negligently damaging said vehicle. LSA-Civil Code, Article 2316.[9]
*440 For the above and foreging reasons the judgment of the District Court herein sustaining defendant's exceptions of no right and cause of action is reversed, and the cause is remanded for further proceedings according to law. The costs of this appeal are assessed against defendant-appellee; all further costs to await final disposition of this matter.
Reversed and remanded.
NOTES
[1] Standard's collision insurer is co-plaintiff for the portion of the damage paid by it.
[2] Of course, had Standard alleged fault on its own part so as to entitle it to subrogations as of right, then the pleaded contributory negligence would likewise subject this tort suit to dismissal, save possibly as a suit for contribution by a co-obligor or joint tortfeasor.
[3] In this Holley case, the depositor (i. e., bailee or possessor) of property was not allowed to recover as plaintiff, because in his petition he had alleged he was the owner of the property damaged. At the trial it developed that the damaged car was actually owned by his father, who had paid for said damages; and the plaintiff-son was not permitted to amend his petition, as this would have changed the nature of the cause of action from one by the owner of property, to one by the possessor of property damaged by another.
[4] "It is now an almost universal rule that for a conversion of, or damage to, bailed goods by a third person, the bailee is entitled to recover the full value of the goods or the full extent of the damage inflicted," Brown, The Law of Personal Property (2nd Edition; 1955) 390, Section 90. Quoting with approval from the English reports, this treatise points out that "the root principle of the whole discussion is that, as against a wrongdoer, possession is title" (p. 392), and that "to allow the defendant, in an action in which his wrongful conduct is in question, to raise doubts as to the plaintiff's title to the property, would raise collateral issues sharply interfering with the principal point in the casethe defendant's wrongdoing," (p. 393).
[5] Roughly translated:

"Although the third person who offers the payment has not a direct civil interest in extinguishing the obligation, the creditor cannot refuse to receive it, for in the last analysis the creditor has no other interest than to be paid; but in this case, the third [party] cannot force the creditor to put him in his [the creditor's] place with regard to the privileges and mortgages he may have or to his right to cause the arrest of the debtor. The law rightly does not allow a third party to interpose himself against the will of the creditor in order to acquire the right to harass the debtor; the third party who pays then acquires only a simple action for reimbursement against the debtor who is then entirely free of the original obligation." (Italics ours.)
[6] Roughly translated:

"He who has effected a payment for the account of a third person without having been given any authority for that purpose, will be allowed to demand reimbursement from the said third person only on the condition of proving that the latter was bound to pay the debt thus discharged by him."
[7] Roughly translated:

"Any third person whatever, even though not interested and acting of his own inclination, has the capacity to pay [the debt of another]. But the third person who thus pays cannot demand subrogation to the creditor's interest (art. 1236); he can exercise against the debtor only the remedy founded on negotiorum gestio or unjust enrichment."
[8] Roughly translated:

"The principle is incontestable * * * [that] The third person who pays the debt of another from his own funds has, although not subrogated to the rights of the creditor, a remedy against the debtor (CN 1236)."
[9] In this regard, it is of no consequence that the plaintiff garageman herein must have intended to favor its customer, the car owner, or to preserve or foster his own business good will in fulfilling the defendant tortfeasor's obligation to the owner of the car damaged through its negligence. Although the institution of negotiorum gestio is often associated with an act motivated by the desire to render a service to the principal whose affair is managed, this motivation is said not to be an essential of its application. All that is required is that the gestor be aware of the fact that he is attending to another's business, in this case the defendant tortfeasor's obligation to repair the damage caused to the owner of the car, and his motive may be to benefit (a) another or even (b) himself.

For instance, the Italian Civil Code of 1942, the newest of the major Codes, specifically reflects this thought with the formula requiring no more than that the gestor act knowing he is managing or attending to another's affair. Italian Civil Code, Article 2028; Pandolfelli, Codice Civile illustrato con i lavori preparatori (Libro d lle Obligazaioni) (1942) 658, 659. And negotiorum gestio is often used in France (according to the jurisprudence and doctrine) and in Germany (under German Civil Code, Article 679) to permit recovery by a person (the gestor) who supplies food, clothing, or money to dependents of the principal. Certainly in these cases the motive is to help the dependent rather than the principal. On the French law, see Picard, La gestion d'affaires dans la jurisprudence contemporaine. Revue Trimestrielle de Droit Civil (1942) 419, 446 seq.
Besides, the mere fact that one protects his own interest or even advances his own welfare does not of itself take the action out of the scope of negotiorum gestio. Thus French jurisprudence admits that a seller, whose buyer could not take delivery of grain because of the rise of a war, could sell the grain both in his own and his buyer's interests and still be a gestor. (Req. 19 juin 1872, Dalloz Periodique 1872.1.471.) Similarly, a co-owner may be a gestor in repairing property or attending to a common obligation: and the surety and co-debtor who pay to fulfill their own obligations as well as those of the principal are treated as negotiorum gestors. See generally on the matter of motive, Picard, La gestion d'affaires dans la jurisprudence contemporaine, Revue Trimestrielle de Droit Civil (1922) 5, at 23; Goré, L'enrichissement sans Cause (1949) No. 261.