REDMANN, Judge.
This appeal relates to one phase of a dispute between the parties to an agreement by which one transferred to the other the former’s rights under an agency contract with a national land title insurance company. Plaintiff was successful in its main demand, but appeals from a judgment for defendant on a reconventional demand.
Disregarding corporate name changes and individuals’ interests, we may say simply that the old company sold specified assets to the new company, including (with *265 the principal’s consent) all the old company’s rights as representative of the national company.
The only question here is whether the new company may recover from the old any portion of premiums prepaid to the old company for insurance on which binders but not actual policies had been issued by the old company. The judgment appealed from allowed recovery and fixed quantum on the same basis as provided in the contract for postpaid business.
The contract’s sole express provision on incompleted business is:
“(f) Items of business and orders from customers placed with Company prior to the Closing Date but not completed as of the Closing Date shall be treated as follows:
“(1) All orders placed by customers with Company upon which binders have been issued prior to the closing, and upon which title policies are issued subsequent to the closing, shall be handled as follows: That portion of all title insurance fees paid by customers to Purchasers or their nominee consisting of Report Charges will be received by Purchasers or their nominee for the account of Company and will be paid to Company, and the balance of such title insurance fees will be received by Purchasers or their nominee for their own account. Attorney’s forwarding fees and title brokers’ commissions incident to such orders will be borne in the proportion of 60% by Company and 40% by Purchasers or their nominee.
“(2) All orders placed by customers with Company upon which binders have been issued prior to the closing, and as to which subsequent to the closing cancellation charge fees are received but no title policies are issued, shall be handled as follows: (formula omitted).” (Emphasis supplied.)
Although the contract specifies a division only of fees “paid by customers to Purchasers”, the old company of course knew, and the purchasers knew or should have known from the financial statement made part of their asset purchase agreement, that there was substantial prepaid incomplete business, where the fees would not literally be “paid by customers to Purchasers”. Note 1 of the financial statement showed “Premiums for title insurance —Orders received at December 31, 1965 but insurance not placed at that date ($68,958.70 paid and $115,317.85 unpaid) * * Yet neither the old company nor the purchasers caused the insertion in their contract of any provision expressly governing prepaid business.
However, the old company’s sole position in the title insurance business was as an agent for and a “branch office” of the national company. Every order for title insurance it received was for the national company; every premium it received was a payment by the customer to the national company for the insurance to be provided by the national company.
The old company held prepaid premiums not in its own right but as agent for the national company, under the agency contract with the national company.
Accordingly we see no need to discuss theories of negotiorum gestio under LSA-C.C. art. 2995 et seq. as a means of resolving this dispute. Nor need we discuss the old company’s argument that it actively opposed the new’s doing the work; after all, the old no longer had the authority to do the work itself. The new company managed the affairs not of the old company, but of the national company, its own then principal.
As successor to the rights of the old company, the new had the right (and presumably an obligation to the national company) to complete unfinished business of the national company which the old company had accepted and been paid for. And the new company, as the old’s successor in “all of its right, title and interest * * * in, to and under” the agency con *266 tract, had the right to receive from the old company the premiums prepaid to the latter and held by it in its capacity as agent, although undoubtedly some portion (not all) of the agent’s part of the premium had already been earned by the old company.
The agreement between old and new companies does not expressly allow any compensation to the old company for work done in issuing binders in prepaid cases. Thus it might be argued the new should receive the entire amount. But a literal interpretation that the new company owed a division only of fees “paid by customers to Purchasers” would lead to an absurd consequence, and thus the intent of the parties cannot be found in those words alone, LSA-C.C. art. 1945. The other words of the contract provision, quoted at the beginning of this opinion, make it appear to have been the intent that, where binders had been issued (showing the insurance contract had been “sold” and of course the preliminary title examination completed), the old company should be entitled to the specified division as compensation. It would be an absurd consequence to conclude that no such compensation was due if the old agent had taken the extra step of collecting the premium.
The new company has never suggested it should receive the entire prepaid premium. Its theories are contractual interpretation to include prepaid in the division of postpaid premiums; or quasi contract including negotiorum gestio. One case it cites, Standard Motor Car Co. v. State Farm Mut. A. Ins. Co., 97 So.2d 435 (La.App.1957), is very interesting for its report of French views on discharge of an obligation by an unsubrogated third party, see C.C. art. 2134.
We believe the most satisfactory ratio in resolving this unfortunate dispute is that we have set forth, namely that the right to hold prepaid premiums belongs exclusively to the agent of the national company, in which position the new company has succeeded the old by contract. The circumstance that th,e new company has neither appealed nor answered this appeal would prevent a judgment for that total in any case; but because this litigation does not include all prepaid business yet will guide th,e parties in disposing of the remainder, we have pointed out our view that the contractual right of the old company to participate in postpaid premiums must apply, with greater force, to prepaid premiums. The contract establishes an agreed measure of value of work done in issuing binders, and to that value the old company is entitled. We conclude that the new company’s entitlement to receive the prepaid premiums in full would place those premiums in the position of being “paid by customers [through the old company] to Purchasers”, and the contractual division of fees is applicable to them.
The judgment appealed from applied that provision by allowing the new company to recover from the old the portion of the prepaid premiums the new would have retained had it received the entirety. The judgment is affirmed at appellants’ cost.
Affirmed.