581 So.2d 714 (1991)
ILLINOIS CENTRAL GULF RAILROAD COMPANY
v.
DEATON, INC., et al.
No. 90-CA-1651.
Court of Appeal of Louisiana, Fourth Circuit.
April 30, 1991.
Rehearing Denied July 17, 1991.
*715 David S. Kelly, Bryan C. Misshore, Lemle & Kelleher, New Orleans, for plaintiff, appellee.
Francis G. Weller, Deutsch, Kerrigan & Stiles, New Orleans, for defendants, appellants.
Before GARRISON, ARMSTRONG and PLOTKIN, JJ.
PLOTKIN, Judge.
On May 22, 1986, a tractor-trailer, owned by Deaton, Inc., and driven by Deaton's employee, James McAtee, approached a railroad crossing in LaPlace, Louisiana. An Illinois Central (IC) train, consisting of two locomotives, was approaching the same crossing. The train was giving its required whistle and the crossing signal lights were flashing. The tractor-trailer attempted to cross in front of the train, and was hit by the train. The trailer was loaded with steel beams, which flew into the air, damaging the locomotives and the crossing signal system. An IC conductor, Darrell T. Prescott, was riding in the second locomotive. He jumped away from the window to avoid the steel beams, fell on a cooler bolted to the floor in the middle of the cab, and injured his knee.
Prescott was treated by Dr. Regan, who later referred him to Dr. Joe Morgan, an orthopedist in Baton Rouge. Dr. Morgan diagnosed the knee problem as chondromalacia. He performed arthroscopic surgery. Dr. Morgan stated that Prescott would not be able to return to work on the railroad. Prescott has not, in fact, worked for the railroad since the accident.
IC feared that Prescott might bring an action against them under F.E.L.A., which required proof only of the slightest negligence. 45 U.S.C.A. § 51 et seq. IC settled with Prescott on December 19, 1986, for $108,944.50 in general damages. Prescott released all the claims he had against all parties, including both IC and Deaton. At the time, Prescott had not hired an attorney or filed any action.
IC then filed this action against Deaton for property damage to its locomotives ($5,948.58) and signal equipment ($17,834.02), the medical expenses of Prescott ($6,126), and the general damage settlement it had paid to Prescott ($108,944.50).
After trial on the issue of fault, judgment was rendered on March 22, 1990, finding Deaton 100% negligent, and awarding the total damages prayed to IC on the basis of the principle of negotiorum gestio. Deaton filed a motion for a new trial which was denied on May 3, 1990. This judgment found that the theory of negotiorum gestio could not be sustained, but reaffirmed the judgment on the basis of equity, unjust enrichment, and a finding that IC had intended to reserve its rights in the release, despite its "inarticulate language." Deaton does not contest the awards for property damage or medical expenses, which it has voluntarily paid. It has appealed only on the issue of the general damage award.
The issue on appeal is whether IC had any legal or equitable right to indemnity from Deaton after it paid the general damage settlement to Prescott.
Deaton contends that under the express language of the release, Prescott surrendered all claims arising out of this accident against all parties, including Deaton. The release states as follows:
[T]he undersigned DOES FURTHER HEREBY FULLY, COMPLETELY AND FOREVER RELEASE, ACQUIT, REMISE AND DISCHARGE DEATON, INC., THE INSURANCE COMPANY OF PENNSYLVANIA, JAMES W. McATEE, BAYOU STEEL, INC., AND ANY AND ALL OTHER PERSONS OR ENTITIES, WHETHER KNOWN, UNKNOWN, IDENTIFIED OR UNIDENTIFIED, FROM AND AGAINST ANY AND ALL CLAIMS, DEMANDS, ACTIONS, CAUSES OF ACTION AND DAMAGES WHATSOEVER, whether arising under any law whatsoever, statutory or jurisprudential, arising out of, on account of or in consequence of a *716 train/truck collision that occurred on or about the 22nd day of May, 1986 ... THIS IS NOT A PARTIAL RELEASE AND THE UNDERSIGNED UNDERSTANDS THAT NO CLAIMS ARE RESERVED AND ALL RESPONSIBLE PARTIES AND ENTITIES ARE RELEASED in consideration of the aforesaid payment by the Illinois Central Gulf Railroad Company.
. . . . .
[A]nd that such consideration was tendered by the said Railroad Company and received by the undersigned as a compromise, transaction and settlement of a disputed claim and additionally to vest in the said Railroad by conventional and legal subrogation all of the undersigned's claims, rights, actions and causes of action against all other persons or entities liable or responsible for the May 22, 1986 incident and the undersigned's consequent injuries.
Release, at 1-2, and 5 (emphasis in original).
IC can only subrogate itself to rights which exist in the party plaintiff. According to the language of the release, Prescott gave up all rights, including those against Deaton, in consideration for the payment by IC. Therefore, Prescott no longer had any rights to which IC could subrogate itself. Absent a contractual basis, IC has no right in law to indemnification by Deaton. Smith v. USAA Cas. Ins. Co., 563 So.2d 572, 574 (La.App. 4 Cir.), writ denied, 568 So.2d 1077 (1990).
IC contends that it and Deaton were solidary obligors. IC rendered the entire performance and is subrogated to the rights of the obligee. Therefore, IC claims that it may seek contribution from Deaton for its virile share of the obligation. Since the trial court found Deaton 100% at fault, that share would be the entire damage award. LSA-C.C. art. 1804.
On the contrary, "the release of one solidary obligor without an express reservation of the right to proceed against other solidary obligors releases all other obligors. La.C.C. art. 2203." The attempted subrogation "was without legal effect because the rights acquired by a subrogee and/or assignee can be no more (and no less) than the rights of the original parties." U.S. Fidelity & Guar. Co. v. Safeco Ins. Co., 420 So.2d 484, 487 (La.App. 1 Cir.1982). In this case, the original party, Prescott, no longer had any rights.
The original petition of IC alleges that Deaton was completely at fault and asks for indemnity. If IC never had any fault, and Deaton was totally at fault, then IC and Deaton were not solidary obligors. LSA-C.C. arts. 1791 and 1794. Indemnity is to be distinguished from contribution. Contribution applies to joint tortfeasors who are solidarily obligated for the same obligation. IC was found not to be a joint tortfeasor and therefore has no right to contribution.
The jurisprudence shows that the source of contribution is subrogation. Perkins v. Scaffolding Rental and Erection Service, Inc., 568 So.2d 549, 551 (La.1990); LeBleu v. So. Silica of Louisiana, 554 So.2d 852, 857 (La.App. 3 Cir.1989), writ denied, 559 So.2d 489-91 (1990). When a plaintiff has released a party, that party is no longer an obligor to the plaintiff. Thus neither the plaintiff nor anyone seeking to stand in the shoes of the plaintiff through subrogation can have a cause of action against the released party. Perkins, 568 So.2d at 551. In Louisiana law, subrogation takes place by operation of law in favor of an obligor who pays a debt owed to another and who has recourse against the other as a result of that payment. LeBleu, 554 So.2d at 857. In this case, IC did not actually owe any debt to Prescott. Therefore it had no right to legal subrogation. Deaton was not an obligor after Prescott released it from all claims. Thus IC has no right of subrogation against Deaton.
"Indemnity shifts the entire loss from a tortfeasor only technically or constructively at fault to one primarily responsible for the act that caused the damage." Casson v. Hartford Fire Ins., 548 So.2d 66, 70 (La.App. 3 Cir.1989), quoting Green v. Taca *717 International Airlines, 304 So.2d 357 (La. 1974).
Indemnity, unlike contribution, is not dependent upon subrogation to the right of the creditor, but finds its basis in the concept of unjust enrichment, i.e. the party primarily at fault is unjustly enriched when one held liable vicariouly or by reason of technical fault discharges the indebtedness.
Casson, 548 So.2d at 70.
"The root principle of an unjustified enrichment is that the plaintiff suffers an economic detriment for which he should not be responsible, while the defendant receives an economic benefit for which he has not paid." Albert Tate, Jr., The Louisiana Action for Unjustified Enrichment: A Study in Judicial Process, 51 Tul.L.Rev. 446, 459 (1977).
Indemnity is due when fairness requires that one person bear the total responsibility for an injury. The basis for indemnity in the civil law, as in the common law, is restitution, the indemnitor having been unjustly enriched when the person seeking indemnity has discharged liability that was his responsibility.
Diggs v. Hood, 772 F.2d 190, 193 (5th Cir. 1985).
The civil law has employed the actio de in rem verso to grant relief for unjust enrichment. Minyard v. Curtis Products, Inc., 251 La. 624, 205 So.2d 422, 427 (1967). The actio de in rem verso originated in the Roman law concept of condictio indebiti, an action which lay for the recovery of payments of non-existent debts. Barry Nicholas, Unjustified Enrichment in the Civil Law and Louisiana Law, 36 Tul.L. Rev. 604, 613 (1962).
The concept is developed in Louisiana law in the section of the Civil Code on quasi contracts. LSA-C.C. arts. 2292-2314. The principles of quasi contract may be applicable when two parties are liable for an injury, one because of fault or negligence, the other merely because of statutory requirements or duty, but without actual fault. When the latter pays compensation for the injury, it may sue the actual tortfeasor for indemnity on the theory of quasi contract. Minyard, 205 So.2d at 430.
The two primary sources of quasi contractual obligations are (1) the transaction of another's business (negotiorum gestio) and (2) the payment of a thing not due (actio de in rem verso). LSA-C.C. art. 2294.
IC contends that it should receive indemnity under the principle of negotiorum gestio. LSA-C.C. art. 2295. IC argues that it undertook of its own accord to manage the affairs of Deaton, by settling Prescott's potential claim against Deaton. However, this principle does not apply to the settlement of a tort claim by one party which later seeks indemnity from another party. Transport Ins. Co. v. Ford Motor Co., 259 So.2d 606, 607 (La.App. 4 Cir. 1972). The theory of negotiorum gestio is not applicable in this case because IC was acting for its own benefit in negotiating the release, not simply for the benefit of Deaton. Judgment, May 3, 1990.
The requirements for the actio de in rem verso are as follows: "(1) there must be an enrichment, (2) there must be an impoverishment, (3) there must be a connection between the enrichment and the resulting impoverishment, (4) there must be an absence of `justification' or `cause' for the enrichment and resulting impoverishment, and finally (5) the action will only be allowed when there is no other remedy at law, i.e., the action is subsidiary or corrective in nature." Minyard, 205 So.2d at 432; Cahn v. Cahn, 468 So.2d 1176, 1183 (La.1985); Edmonston v. A-Second Mortgage Co. of Slidell, Inc., 289 So.2d 116, 120-23 (La.1974).
In the instant case, Deaton has been enriched because it was released from its liability for its negligent injurying of Prescott. IC has been impoverished because it paid for Prescott's injury although it was not itself actually at fault in causing that injury. The enrichment and the impoverishment are interconnected by the accident and the negotiation of the release.
The fourth requirement is that the enrichment be without justification. An unjust *718 enrichment is unjustified "if no legal justification for it exists by reason of a contract or provision of law intended to permit the enrichment or impoverishment or to bar attack upon the enrichment," that is, that no "contract or provision of law was intended to permit the defendant tortfeasor to escape liability." Albert Tate, Jr., The Louisiana Action for Unjustified Enrichment, 50 Tul.L.Rev. 883, 904 (1976), 51 Tul.L.Rev. 446, 456 (1977). The "enrichment and impoverishment resulting from the execution of the one party's obligation has no legal justification unless the other party has also executed [its] reciprocal obligation." Nicholas, 36 Tul.L.Rev. at 631-32. In this case, Deaton did not execute its obligation to pay for the injury it had caused.
The final condition is that no procedural remedy be available to prevent the enrichment and impoverishment. Judge Tate discusses the case of Standard Motor Car Co. v. State Farm Mutual Automobile Ins. Co., 97 So.2d 435 (La.App. 1 Cir.1957), in which a garage owner paid for repairs to a customer's car when the damage had been caused by a third party. The garage owner returned the car to the customer without securing a subrogation of the customer's rights against the third party. The failure of the garage owner to secure a subrogation from the customer is not a legal cause that justifies the garage owner's impoverishment. Tate, 51 Tul.L.Rev. at 456-57. The purpose of a subrogation is "not to defeat [the garage owner's] recovery for the debt of another paid by him when he does not secure one." Id. at 457.
In addition, this court has held that: A compromise does not prejudice the right of the `indemnitee' to institute an action against the `indemnitor;' and an `indemnitee' is not required to exhaust all legal remedies before paying the claim for which he later seeks to be indemnified.
Hospital Service Dist. No. 1 v. Delta Gas, Inc., 171 So.2d 293, 301 (La.App. 4 Cir.), writ refused, 247 La. 673, 674, 173 So.2d 540 (1965). Under Hospital Service, IC had the right to settle Prescott's claim without forfeiting its right to seek indemnity from Deaton for the latter's unjust enrichment. However, it should be noted that the attorneys should not have included Deaton in the release and should have secured valid subrogation rights against Deaton.
The principle that no person should be unjustly enriched at the expense of another is founded on natural law. Independent of positive law, it is based on equitable and moral considerations so fundamental that the legal systems of all civilized societies have eventually recognized it as a basis for recovery by an unjustly impoverished party against an unjustly enriched party.
Tate, 50 Tul.L.Rev. at 883.
Thus the district court was correct in awarding indemnity to IC on the basis on unjust enrichment after its settlement of the general damage claim with Prescott. For the above reasons, the judgment of May 3, 1990, is affirmed. Appellant is cast for all costs.

ON APPLICATION FOR REHEARING
PER CURIAM.
Deaton, Inc. (Deaton) has filed an application for rehearing of our decision in Illinois Central Gulf Railroad Co. v. Deaton, Inc., No. 90-CAS-1651, issued on April 30, 1991. For the reasons given below, we deny rehearing.
In its application, Deaton claims that the doctrine of actio de in rem verso should not apply in this case. Deaton primarily contends that the fifth requirement for this doctrine, that no procedural remedy be available to prevent the unjust enrichment and impoverishment be available, was not met. Deaton questions the citation of two cases, Hospital Service District No. 1 v. Delta Gas, Inc., 171 So.2d 293 (La.App. 4 Cir.), writ refused, 247 La. 673, 674, 173 So.2d 540 (La.1965), and Standard Motor Car Co. v. State Farm Mutual Automobile Ins. Co., 97 So.2d 435 (La.App. 1 Cir. 1957).
Even if these two cases may be distinguishable, other cases support the position that this fifth requirement was satisfied. *719 Deaton claims that Illinois Central (IC) could have reserved its rights against Deaton in the release, but did not. However, at the time this suit was filed against Deaton, IC did not, in fact, have any remedy at law. In Minyard v. Curtis Products, Inc., 251 La. 624, 205 So.2d 422 (1967), the subcontractor should not have guaranteed the quality of the material. This guarantee became the basis for his liability. However, this did not prevent him from seeking indemnification in quasi-contract, that is, from recovery under the principle of actio de in rem verso. Likewise, in Carter v. Flanagan, 455 So.2d 689 (La.App. 2 Cir. 1984), the negligence or mistake of the notary in passing a fraudulent act of sale did not bar recovery against the unjustly enriched property owner.
Perhaps IC should not have negotiated a release without reserving its rights against Deaton. However, Deaton sought to take advantage of the situation and tried to benefit from IC's mistake. Thereby Deaton, which was found by the trial court to be 100% at fault in causing the accident, asks this court to preserve its unjust enrichment by making IC bear the cost of Prescott's injuries. When, as here, there is no remedy in law, equity seeks to avoid injustice. Therefore, on the basis of the equitable principle of actio de in rem verso, we reaffirm our original opinion and deny rehearing.
REHEARING DENIED.