Mrs. Joe J. TOUCHSTONE, et al., Plaintiffs,

v.

G.B.Q. CORPORATION, et al., Defendants.

No. 82–1613 "G".

United States District Court, E.D. Louisiana.

Oct. 19, 1984.

Lawrence D. Wiedemann, Wiedemann & Fransen, New Orleans, La., for plaintiffs.

Gene S. Palmisano, Exxon Corp., New Orleans, La., for defendants.

## MEMORANDUM AND ORDER

SEAR, District Judge.

Plaintiff, Mrs. Joe J. Touchstone, brought this action, individually and as a personal representative of the estate of her husband, Joe J. Touchstone, and on behalf of their major children, Shirley Touchstone Tillman and Joe J. Touchstone, Jr., to recover damages for the wrongful death of her husband, which she alleges was caused by silicosis, a disease she contends he contracted during his employment with several sandblasting and painting companies.

Plaintiff sued 29 defendants, including her husband's employers during the years 1959 to 1978, certain companies that supplied equipment and materials to his employers, certain companies that contracted with Touchstone's employers for services, and certain insurers of all of these companies. Jurisdiction was alleged under the Jones Act, 46 U.S.C. § 688, the General Maritime Law and under the Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332.

Plaintiff alleged that her husband had sandblasted on oil drilling platforms owned by various oil companies including Exxon Corporation, and that Exxon "knew or should have known of the dangers involved in the use of sand for sandblasting purposes, knew or should have known that the equipment being furnished to deceased was not adequate to protect him from the dangers of contracting silicosis and should

have warned deceased of the dangers on a timely basis."[1] Plaintiff prayed for damages of twelve million five hundred thousand dollars ($12,500,000.00).

In June and July of 1984, several of the platform owners moved for summary judgment on the ground that plaintiff had failed to provide to them during the more than two years of discovery any evidence that Touchstone had ever sandblasted on any of the platforms owned by them. Exxon first moved for summary judgment on June 12, 1984. Exxon contended that plaintiff had not responded to interrogatories, a request for admissions and a request for production of documents, all of which were intended to discover whether any relationship existed between Touchstone and Exxon. Consequently, Exxon argued that there was no evidence that Touchstone ever sandblasted on an Exxon platform. As part of its opposition to Exxon's motion and despite the fact that the time for responding to Exxon's request for admissions had expired, plaintiff requested that it be permitted to respond to the admissions by denying them[2] and attached the transcript of Touchstone's testimony given three years before in the case of a fellow employee, William A. Scarborough. *William A. Scarborough v. Northern Assurance Company of North America*, No. 77–2523 (E.D.La.1981) (Heebe, J.) *appealed in part sub nom Scarborough v. Travelers Insurance Co.*, 718 F.2d 702 (5th Cir.1983) (*"Scarborough"*). In the *Scarborough* case, Touchstone testified that he had sandblasted on Exxon platforms. On the basis of that testimony I found a material issue of fact existed and therefore denied Exxon's motion for summary judgment.

Plaintiff subsequently responded to defendant's request for admissions, but without moving for leave of the court.[3] At the pre-trial conference held on August 27,

---

**1.** ¶ XII of plaintiff's complaint. Document No. 1.

**2.** Plaintiff's request is found in her opposition memorandum; she did not then, and has not since, moved for leave to amend or withdraw the admissions, she was deemed until that time

to have made because of her failure to respond in accordance with the Federal Rules of Civil Procedure. *See infra* note 8 & accompanying text.

**3.** *See supra* note 2.

1984, counsel for Exxon stated that plaintiff had not yet responded to Exxon's interrogatories and request for production of documents. Following the pre-trial conference, plaintiff's counsel orally informed counsel for Exxon that every fact witness on plaintiff's list of witnesses would testify at trial that Touchstone had sandblasted on Exxon platforms. Exxon was surprised by this untimely and informal revelation. Because the trial was only eight days away, Exxon immediately moved to continue the trial to permit it to discover the testimony of each fact witness listed by plaintiff as it pertained to Exxon.

I sought to avoid continuing the trial by requiring plaintiff within two days to produce the witnesses in New Orleans so that they could be interviewed or deposed in the hope that Exxon could adequately prepare its defense. Following these depositions, counsel for Exxon argued that it was impossible for him to prepare properly in the time remaining and it was therefore necessary that the trial be continued.

In the meantime, on September 4, 1984, Exxon moved for either summary judgment or for dismissal of plaintiff's claims or alternatively for sanctions under Rule 11 of the Federal Rules of Civil Procedure. It is difficult to separate the grounds asserted by Exxon in support of its motion into the divisions implied by its title, but it appears that Exxon argues for dismissal as an appropriate sanction (1) for the failure of plaintiff's counsel to make the "reasonable inquiry" of the factual basis of its allegations against Exxon in any pleading or document filed with the Court as required by Rule 11 of the Federal Rules of Civil Procedure; or (2) for the failure of plaintiff to comply with discovery requests to the prejudice of Exxon. Dismissal is also the remedy sought by Exxon because, it argues, plaintiff has already received a sufficient amount of money in settlement of its claims against other defendants and that the "maximum recovery rule" would moot any judgment against Exxon.

Exxon also seeks dismissal in its motion of September 4, 1984 on the further grounds that Touchstone's employers were independent contractors of Exxon and that it could not be liable because it owed no duty to Touchstone. Whether the grounds for dismissal are asserted as a motion to dismiss under Federal Rule 12(b)(6) or as a motion for summary judgment pursuant to Federal Rule 56, the motion must necessarily be treated as one for summary judgment because I have been asked to and must consider evidence extrinsic to the record to decide the motion.[4]

Finally Exxon argues, in the event that both dismissal and summary judgment are denied and the trial to proceed without continuance, plaintiff should not be allowed to present any testimony regarding Touchstone's employment on Exxon platforms other than that about which counsel for plaintiff had informed counsel for Exxon prior to the pre-trial conference. Specifically, Exxon asked that plaintiff be limited to Touchstone's own testimony in the *Scarborough* case, and that of Granville Yawn, another co-worker of Touchstone whose deposition counsel for Exxon had attended.

### 1. Rule 11 Sanctions

■ Exxon asserts that counsel for plaintiff persistently violated the requirement of Rule 11 of the Federal Rules of Civil Procedure that pleadings be signed only after a reasonable inquiry. Rule 11 provides, in relevant part:

The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

**4.** Fed.R.Civ.P. 12(b).

Fed.R.Civ.P. 11. The remedy provided by Rule 11 for violation of this requirement is that:

> the court, upon motion or upon its own initiative, shall impose upon the party who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including reasonable attorney's fees.

Fed.R.Civ.P. 11. Exxon cites a Ninth Circuit case, *Rhinehart v. Stauffer,* 638 F.2d 1169 (9th Cir.1979), as holding that dismissal is an appropriate remedy for violations of Rule 11. While dismissal may be an appropriate remedy in some cases, it is inappropriate here.

The extent of "reasonable inquiry" required by Rule 11 varies from case to case. This case involves events occurring as many as twenty-five years ago of which the principle witness, Touchstone, is now deceased. In such a case, before discovery, the facts available that may be inquired into may be limited. On the other hand, there comes a time after discovery has progressed that counsel should have knowledge of the specific facts that would support the conclusion that the action is "well grounded in fact."

Exxon alleges that counsel for plaintiff filed pleadings or motions without this knowledge and therefore without making the reasonable inquiry required by Rule 11, but it appears Exxon incurred no undue expense as a result. Sanctions may, nevertheless, be appropriate.

### 2. Plaintiff's Failure to Comply with Discovery Requests

Exxon contends that it is entitled to a dismissal of plaintiff's claims against it because plaintiff failed to respond in a timely manner to its discovery requests, all served on plaintiff on January 20, 1984, well before the discovery cutoff date.[5] The interrogatories specifically asked plaintiff to state any fact and to identify any witnesses and documents or other evidence that tended to show that Touchstone at any time performed services for Exxon. Exxon asserts that the failure of plaintiff to provide any of this information until after the pretrial conference, one week before the scheduled trial date, severely compromised its ability to prepare a defense, and is therefore prejudicial.

Plaintiff does not deny that Exxon's discovery requests were not answered in accordance with the Federal Rules of Civil Procedure. In fact, plaintiff seeks to shift its discovery burden to the defendant and require Exxon to search the record, documents and testimony of another case, one in which defendant's counsel did not participate, to find its own answers to its discovery requests. Indeed, in plaintiff's opposition memorandum, plaintiff's counsel cavalierly states:

> It is obvious that counsel for Exxon, who so strongly urges prejudice in this matter, had no difficulty obtaining the testimony in preparation for this Motion because he quoted from the deposition of Joe J. Touchstone in the Scarborough case at length in his Memorandum.

Yet plaintiff's counsel blithely neglects to mention that it was he who provided the transcript of testimony from the other case to defendant's counsel.

 The Federal Rules of Civil Procedure impose no duty upon a defending party to consult the court record of another case to learn the substance of his opponent's case. The Rules do, however, impose a duty upon a party to answer appropriate discovery requests made of him. Rules 33, 34, and 36, governing interrogatories, requests for production of documents and requests for admission, each require that written answers or objections to discovery requests be served within 30 days of service of the request.[6] If a party

---

**5.** The request for admissions was not answered until July, 1984, and then without leave of court. The interrogatories and request for production of documents were not answered until the day after the pre-trial conference, one week before trial.

**6.** Fed.R.Civ.P. 33(a), 34(b), 36(a).

fails to answer, the requesting party may apply to the court to compel discovery.[7] While a plaintiff may find it necessary to compel discovery to obtain evidence necessary to sustain his burden of proof, there is nothing in the rules that requires either party to compel the other to respond. Instead, the rules protect a party seeking timely discovery and impose penalties upon an opponent who fails to respond or who seeks to use evidence improperly withheld during discovery.

▆▆▆ With respect to requests for admission, Rule 36 provides that:

> The matter is admitted unless, within 30 days after service of the request ... the party to whom the request was directed serves upon the party requesting admission a written answer or objection addressed to the matter....

Fed.R.Civ.P. 36(a). Thus, the questioning party can rely on the silence of the non-responsive party to establish conclusively the matter, unless the court on motion permits amendment or withdrawal of the admission.[8] Fed.R.Civ.P. 36(b). Rule 36 provides no further sanction. Therefore, plaintiff's failure to comply with Rule 36 discovery is not properly a ground for dismissal.

▆▆ Where a party fails to answer interrogatories or a request for production of documents, it risks far more severe sanctions. Rule 37(d) provides, in relevant part, that:

> If a party ... fails (2) to serve answers or objections to interrogatories submitted under rule 33, after proper service of interrogatories, or (3) to serve a written response to a request for inspection sub-

mitted under Rule 34, after proper service of the request, the court in which the action is pending on motion may make such orders in regard to the failure as are just, and among others it may take any action authorized under paragraphs (A), (B), and (C) of subdivision (b)(2) of this rule. In lieu of any order or in addition thereto, the court shall require the party failing to act or the attorney advising him or both to pay the reasonable expenses, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

Fed.R.Civ.P. 37(d). The actions authorized under Rule 37(b)(2) include:

> (A) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purpose of the action in accordance with the claim of the party obtaining the order;
>
> (B) An order refusing to allow the disobedient party to support or oppose designated claims or defenses or prohibiting him from introducing designated matters in evidence;
>
> (C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party.

A court therefore has broad discretion to impose sanctions on a party for failing to answer interrogatories or requests for the production of documents. *See Eastway General Hospital v. Eastway Women's Clinic,* 737 F.2d 503 (5th Cir.1984) (discovery sanctions including striking of abor-

---

**7.** Fed.R.Civ.P. 37(a).

**8.** One of the requests that plaintiff failed to answer within the 30 day period prescribed by the rule was to admit that it had no evidence of any kind that Touchstone had performed services for Exxon for any more than two weeks, if at all. Although plaintiff did eventually answer Exxon's request for admission, she did not move to amend or withdraw the admission deemed to have been made because of the failure to answer within the 30 day period. Thus, plaintiff could be deemed to have admitted that she

possesses no evidence that Touchstone sandblasted on an Exxon platform for more than two weeks, if at all.

Notwithstanding plaintiff's failure to respond in a timely manner or to move for leave to amend or withdraw before she did respond, I must consider the entire record in deciding a motion for summary judgment and this record contains Touchstone's testimony in the *Scarborough* case that contradicts the admissions I would otherwise deem plaintiff to have made.

tion clinic's defenses, entry of adverse judgment on the merits and assessment of $1,000 in attorney fees justified by repeated failure of party to appear for deposition and to produce documents as scheduled; *In re Liquid Carbonic Truck Drivers Chemical Poisoning Litigation,* M.D.L. Docket No. 252, 580 F.2d 819 (1978) *cert. denied sub nom, Strain v. Turner,* 441 U.S. 945, 99 S.Ct. 2165, 60 L.Ed.2d 1047 (1979). (Affirming my order of dismissal entered for failure of plaintiff over a protracted period to answer interrogatories or to comply with discovery orders.)

Had the trial not been continued, I would have limited plaintiff, on the issue of Touchstone's connection with Exxon, to the testimony of Touchstone in the *Scarborough* case and that of Granville Yawn.

### 3. Exxon's Duty to Employees of an Independent Contractor

Exxon contends that because Touchstone's employers were its independent contractors Exxon owed no duty to Touchstone for their negligent acts and therefore as a matter of law is not liable to plaintiff and is entitled to summary judgment. Exxon also argues that it was granted a directed verdict on just that ground in *William A. Scarborough v. Northern Assurance Company of America, supra,* and that under a theory of estoppel it should be dismissed from this case.

Summary judgment is appropriate only if the pleadings, affidavits, depositions, and other papers in the record indicate that there is no genuine issue as to any material fact and that movant is therefore entitled to judgment as a matter of law. Fed.R. Civ.P. 56(c); *e.g., Poller v. Columbia Broadcasting System, Inc.,* 368 U.S. 464, 467, 82 S.Ct. 486, 488, 7 L.Ed.2d 458 (1962); *Kellerman v. Askew,* 541 F.2d 1089 (5th Cir.1976). Moreover, the burden is on the movant to demonstrate affirmatively the absence of any issue of material fact on all issues raised in the pleadings. *Chavez v. Noble Drilling Corp.,* 567 F.2d 287, 289 (5th Cir.1978); 10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure

§ 2727, at 121 (1983). The party opposing a motion for summary judgment, however, may not rest on allegations or denials in his pleadings; once the movant has made his showing under Rule 56, the opposing party must present evidence that there is a material issue of fact in the case. Fed.R.Civ.P. 56(e); Wright, Miller & Kane, *supra,* § 2721 at 42–43. If he does not so respond, summary judgment, if appropriate, shall be entered against him. Fed.R.Civ.P. 56(e); *e.g., Ferguson v. National Broadcasting Company,* 584 F.2d 111 (5th Cir. 1978).

#### a. The Material Facts

In support of its motion and pursuant to Local Rule 3.9, Exxon has submitted a "statement of material facts not in dispute" in which it states that an independent contractor relationship existed between Exxon and Joe Touchstone's employers, Coating Specialists, Inc. and Land and Marine Applicators, Inc. Exxon has also submitted the sworn deposition testimony of four of plaintiff's witnesses who allegedly were co-workers of Joe Touchstone, as well as a portion of the trial transcript of Touchstone's testimony in the *Scarborough* case. Exxon submitted this testimony to show the limited nature of Exxon's contacts with and control over the operation of sandblasting contractors on its platforms. Exxon has also included "the written contract between Exxon and Coating Specialists, Inc." and "the written contract between Exxon and Land and Marine Applicators, Inc."[9]

Ordinarily, documents are not admissible unless they are authenticated by and attached to an affidavit in which the affiant is a person through whom the exhibits could be admitted into evidence. Fed.R.Civ.P. 56(e); Wright, Miller & Kane, *supra,* § 2772 at 58–60. Exxon's motion is not accompanied by an affidavit, and the documents appended are not otherwise authenticated. However, inadmissible documents may be considered by the court if they are not challenged. Wright, Miller &

9. Pltf's Mem.Sup. Motion Sum.J. at 9.

Kane, *supra*, at 60; *Auto Drive-Away Co. of Hialeah, Inc. v. ICC,* 360 F.2d 446 (5th Cir.1966); *Lawson v. American Motorists Ins. Co.,* 217 F.2d 724, 726 (5th Cir.1954); *Townsend v. Columbia Operations,* 667 F.2d 844 (9th Cir.1982). Because plaintiff's "Response to Exxon Corporation's Motion for Summary Judgment" contains no challenge to the documents relied upon by Exxon I have considered them in deciding Exxon's motion.

Further, the local rules of court for the Eastern District of Louisiana provide that all facts set forth by the moving party under Local Rule 3.9 will be deemed admitted unless contested. Plaintiff has not filed the statement of material contested facts required by Local Rule 3.10 and accordingly is deemed to have admitted that Touchstone's employers were independent contractors of Exxon.

In any case, plaintiff's response does not mention much less challenge Exxon's characterization of Touchstone's employers as independent contractors. Although plaintiff's pre-trial memorandum, incorporated by the plaintiff in its response to Exxon's motion, addressed "the platform owner (oil company) liability in this case" it does not challenge seriously Exxon's characterization. The only challenge is plaintiff's one-time use of the word "alleged" to modify "independent contract-employer" when it referred to Touchstone's former employers.

Plaintiff assumes or concedes that an independent contractor relationship existed between Exxon and Touchstone's employers but argues nevertheless that the existence of such a relationship does not shield Exxon from liability in this case.

Nevertheless, "[w]here the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented." Judicial Conference Advisory Committee on Federal Rules of Civil Procedure Note to the 1963 amendments to Rule 56. *E.g., Adickes v. S.H. Kress & Company,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). In this case Exxon has included copies of its contracts with Touchstone's employers in which those employers are specifically denominated as independent contractors. Those contracts alone, apart from the depositions Exxon has submitted that corroborate them, are sufficient to justify a finding that Touchstone's employers were in fact independent contractors. *See e.g. Alexander v. United States,* 605 F.2d 828, 832 (5th Cir.1979) (finding that the government was not liable to an injured employee because his employer was denominated as an independent contractor in its contract with the government); *Copeland v. Gulf Oil Corp.,* 672 F.2d 867, 871 (11th Cir.1982) (finding employer of injured employee to be independent contractor of oil well owner because the contract established the employer as such, even though in his deposition Gulf's safety supervisor stated that he had the power to hire and fire employees of the contractor; therefore the well owner was not liable to the employee).

Moreover, where the party opposing summary judgment has failed to present affidavits under Rule 56, as plaintiff has failed to do here, the court may accept the facts alleged by movant as true and grant summary judgment. *Liberty Leasing Co. v. Hillsum Sales Corp.,* 380 F.2d 1013, 1015 (5th Cir.1967) (summary judgment proper where movant's motion supported by affidavit and numerous exhibits and opposing party filed no response). Thus, there is no genuine issue as to the material fact of the nature of the relationship between Exxon and Touchstone's employers: they were independent contractors of Exxon. What remains is to determine whether Exxon is entitled to judgment as a matter of law.

### b. The Law

Exxon contends that it owes no duty to the employees of its independent contractors for the negligent acts of those independent contractors. That contention, limited by two exceptions, is indeed the law of Louisiana and of the Fifth Circuit. *Ewell v. Petro Processors of Louisiana, Inc.,* 364

So.2d 604, 606 (La.App.1978); *Wallace v. Oceaneering Intern.*, 727 F.2d 427, 437 (5th Cir.1984); *Moser v. Texas Trailer Corp.*, 623 F.2d 1006, 1015 (5th Cir.1980).

#### i.) Exception for Ultrahazardous Activities

■ The first exception, which plaintiff argues is applicable in this case, is for ultrahazardous activities. If the activities in which the injured worker was engaged are ultrahazardous, the principal is liable for injuries incurred by him even though he was an employee of an independent contractor.

■ Whether an activity is ultrahazardous is a question of law. *O'Neal v. International Paper Co.*, 715 F.2d 199, 201 (5th Cir.1983) (per curiam) (applying Louisiana law); *Ashland Oil, Inc. v. Miller Oil Purchasing Co.*, 678 F.2d 1293, 1308 (5th Cir. 1982) (same). The identifying feature of an ultrahazardous activity is one in which there is a risk of harm that cannot be eliminated through the exercise of due care. *O'Neal v. International Paper Co.*, *supra* at 202; *Kent v. Gulf States Utilities Co.*, 418 So.2d 493, 498 (La.1982) ("[t]he activity, by its very nature, simply cannot be done without a high degree of risk of injury"). *See Ashland Oil, Inc. v. Miller Oil Purchasing Co.*, *supra* at 1307–08.

In *Kent v. Gulf States Utilities Co.*, *supra*, 418 So.2d 493 (La.1982), the Louisiana Supreme Court surveyed the Louisiana cases in which particular activities had been found to be ultrahazardous. These activities include "pile driving, storage of toxic gas, blasting with explosives, crop dusting with airplanes, and the like...." *Id.* at 498 (citing Louisiana cases and to W. Prosser, The Law of Torts § 78 (4th ed. 1971). The Louisiana Supreme Court determined that an ultrahazardous activity is one that is so inherently dangerous that absolute liability is properly imposed on the principal. Specifically, in *Kent,* the court found that the transmission of electricity over high tension power lines was an everyday occurrence that could be done without a high degree of risk of injury. *Id.* at 498–99. Therefore, the court ruled that it

was not an ultrahazardous activity. *Id.* at 499. *But see Orr v. United States*, 486 F.2d 270, 274–76 (5th Cir.1973) (holding that under Florida law, an employee of an independent contractor working near government owned and operated power lines could recover under the Federal Tort Claims Act because the work was sufficiently hazardous *and* the relation between the government and the contractor was sufficiently close).

Other decisions in which the activity involved was found not to be ultrahazardous include: *O'Neal v. International Paper Co., supra* (cutting up a dilapidated boiler); *Ewell v. Petro Processors of Louisiana, Inc.*, 364 So.2d 604 (La.App.1978) *cert. denied* 366 So.2d 575 (La.1979) (dumping of toxic waste); *Fitzgerald v. Compania Naviera La. Molinera*, 394 F.Supp. 413 (E.D.La.1975) (Rubin, J.) (loading of grain onto a ship).

■ Although the determination of whether an activity is ultrahazardous is a question of law, the answer to that question appears to turn on the factual question of whether the activity can be made safe. In the determination of whether an activity is ultrahazardous, however, judicial decisions do not rest on factual evidence presented by the parties. The Fifth Circuit in *O'Neal v. International Paper Co., supra,* premised its holding that the demolition of a boiler was not ultrahazardous on a comparison of boiler demolition with the dumping of toxic waste that was found not to be ultrahazardous in *Ewell v. Petro Processors of Louisiana, Inc., supra.* The *O'Neal* court reasoned that if "dumping toxic chemicals in waste pits is not an ultrahazardous activity [citing to *Ewell* ], then cutting up a dilapidated boiler with a blow torch is not one either." 715 F.2d at 202. Similarly, the Louisiana Supreme Court in *Kent v. Gulf States Utilities Co., supra,* determined that the transmission of electricity was not ultrahazardous based on the court's observation that such transmission was an everyday occurrence in which injury almost always is the result of someone's substandard conduct. 418 So.2d at 498–99.

■ Thus, it does not appear that Exxon need provide evidence as to the non-ultrahazardous nature of sandblasting. The decision is one to be made by the court based on a comparison with activities previously held to be ultrahazardous and non-ultrahazardous.

■ Plaintiff admits in its pre-trial memorandum that sandblasting can be accomplished under safe conditions. Plaintiff concedes that the platform owners could have insured that the work was done under safe conditions "very easily by specifying that the required [plaintiff does not disclose by whom required] air-fed hoods be used ... or that non-silica producing blasting material be used." An ultrahazardous activity is one that by definition cannot be conducted safely. The fact that safety can be so easily achieved in sandblasting as plaintiff suggests necessarily makes sandblasting a non-ultrahazardous activity. Even if it were Exxon's burden to show the absence of contested fact with respect to the nature of sandblasting, plaintiff has conceded that no issue of fact exists. Plaintiff challenges only the legal conclusion to be drawn from those facts. Therefore, the exception for ultrahazardous activities does not apply in this case.

### ii.) Exception Where Principal Is In Control

■ The second exception to the general rule, which plaintiff does not contend is applicable to this case, is for instances where the principal exercises operational control over the work performed by its independent contractor. In a recent Fifth Circuit case, *Wallace v. Oceaneering Intern., supra,* 727 F.2d 427, an offshore oil field diver brought suit against his employer, a diving contractor; the drilling contractor; and the owner of an oil well for injuries sustained while on a diving assignment in support of a drilling operation at the oil well. The court stated that:

This Court has consistently held on similar facts that a principal, such as [the well owner], who hires independent contractors over which he exercises no operational control has no duty to discover and remedy hazards created by its independent contractors.

(citing *Moser v. Texas Trailer Corp., supra,* 623 F.2d 1006 at 1014–15; *McCormack v. Noble Drilling Corp.,* 608 F.2d 169, 175 (5th Cir.1979)).

In *Wallace,* there was only one employee of the well owner at the drill site. The court observed that:

His role was that of the usual 'company man' in the offshore oil patch. He monitored the progress of the work of the independent contractors, making sure that the result was what the oil company [and well owner] had bargained for. This would include a concern whether the well was drilled in the proper location but not in detail how it was done. Although he could have ordered the work stopped if he observed an obviously dangerous situation, inspections of equipment and the choice of safe work methods were understood by all to be the responsibility of [the drilling contractor], and as to diving equipment and procedures, [the diving contractor].... [The company man] had no actual control or responsibility for the details of the drilling and diving work, but merely inspected progress.

*Id.* at 436–37. On these facts and on evidence reflecting that the well owner did not retain control over the particular operation in which the diver was injured, the Court of Appeals held that the well owner could not be held liable for the negligence of the contractors and was therefore entitled to a directed verdict. *Id.* at 437.

Similarly, in *McCormack v. Noble Drilling Corp., supra,* 608 F.2d 169, an employee of a company that had contracted with a well owner to install metal casing in the well brought an action against the drilling contractor and the well owner to recover for injuries suffered while installing the casing. The Court of Appeals held that the well owner's representative at the job evidenced no responsibility for and no knowledge of the specific procedures used by the contractors at the time of the accident and

was therefore not liable for the injuries sustained by the injured employee of the drilling contractor. *Id.* at 174. *Accord Bourg v. Texaco Oil Co., Inc.,* 578 F.2d 1117 (5th Cir.1978) (affirming decision of Heebe, J. not to instruct jury that Texaco could be held liable to Bourg for the negligence of his employer, who was an independent contractor to Texaco).

 In this case, according to the deposition testimony submitted by Exxon, it was the practice of Exxon's representatives to visit Exxon's platforms on the order of several times each week to check the progress and quality of the work being performed by Exxon's sandblasting contractors. During these inspections, the Exxon representative spoke only to the foreman of the sandblasting crew. This description accurately tracks that of the "company man" in *Wallace v. Oceaneering Intern., supra,* and supports the conclusion that in this case, Exxon was not in control and therefore is not liable for the offenses of its independent contractors.

### iii.) Alleged Exception Where Principal Has Knowledge

Although there are only two recognized exceptions to the rule that the principal employer owes no duty to the employees of its independent contractors for the negligent acts of those independent contractors, plaintiff urges a third. Plaintiff argues that Exxon knew of the hazards of sandblasting "long before 1968" when it "directed that no subcontractor should be allowed to permit its sandblasters to blast on Exxon platforms without air-supplied respirators." In support, plaintiff cites two exhibits contained in its book of trial exhibits. One is a copy of a letter dated May 24, 1968, to and from individuals named, but not otherwise identified, stating that "contractors for Humble [Exxon's predecessor] should be required to furnish their sandblasters abrasive blasting respirators of the type approved by the United States Bureau of Mines." The other is a copy of what appears to be the cover page and two inside pages of a document entitled, "Safe-

ty Manual, Production Department, 1969." The two inside pages list suggestions or requirements with regard to sandblasting. Plaintiff does not state so expressly, but implies that Exxon should be held liable for the negligence of its independent contractors because Exxon allegedly knew that the work practice of those contractors was not safe.

Before reaching the substance of the extent of Exxon's knowledge, if it could in fact be determined from such "exhibits", it is necessary to determine the legal effect of knowledge of unsafe work practices of its independent contractors of safety rules promulgated by Exxon and any safety inspections that it may have conducted. *Alexander v. United States,* 605 F.2d 828 (5th Cir.1979) involved a claim under the Federal Tort Claims Act against the government arising from the death of plaintiff's husband while he was employed in a government owned munitions factory. Although the case involved interpretation of Texas law, the law as interpreted is not different from Louisiana law.

The munitions factory was operated by the decedent's employer under contract to the government. The government instituted and supervised safety in the plant to ensure compliance with the contract and with safety regulations of the United States. Government employees performed analyses of and approved all proposed testing and manufacturing devices and procedures before they were put into operation at the plant. The contract also authorized certain government employees to stop any activity at the plant that failed to conform to the government's safety rules.

Nevertheless, because the contract expressly stated that the operator of the plant was an independent contractor, the Court of Appeals ruled that absent some showing of day-to-day control over plant operations by the United States, there was no basis for finding that operation of the plant was a joint endeavor. Therefore, the United States could not be held liable for any negligence of the independent contractor. *Id.* at 835. *See LeSuer v. United*

*States*, 617 F.2d 1197, 1199 (5th Cir.1980) ("the law appears settled ... that employees of independent contractors cannot recover from the government under the Federal Tort Claims Act on the basis of contractual obligations requiring vigorous safety measures and the presence of government safety inspectors in the area); *Copeland v. Gulf Oil Corp., supra*, 672 F.2d at 871 (11th Cir.) (because contract labeled injured employee's employer an independent contractor, the employer was an independent contractor and safety manuals of the principal were irrelevant).

■ Therefore, generalized knowledge regarding safety and required procedures to implement that knowledge are neither by themselves a source of liability of the principal, nor sufficient to invoke the "control" exception to the general rule protecting the principle from liability for the negligence of its independent contractors. Similarly, the Louisiana Supreme Court in *Kent v. Gulf States Utilities Co., supra*, held that specific knowledge of a dangerous work practice of an employee of an independent contractor was not a sufficient basis for liability of the principal. In *Kent*, plaintiff was an employee of an independent contractor who had been hired by the state to build a road. The employee was involved in grooving the road surface which required that he pull a rake with a thirty foot handle across sections of freshly poured concrete. The metal rake handle came into contact with an overhead powerline and plaintiff was electrocuted. The project inspector of the State of Louisiana Department of Highways was present at the time of the accident. The court rejected plaintiff's contention that the inspector owed a duty to the employee to insure that he used proper tools and a safe method to perform his work. The court found:

> The duty to provide [plaintiff] with a safe place to work, including proper tools, equipment and methods for safely performing his duties, was primarily on his employer and the employer's executive officers. [The inspector] arguably could have prevented the accident by interject-

ing himself and demanding that [plaintiff's employer] furnish [plaintiff] with a fiberglass rake, but he had no such duty to [plaintiff] and is not liable for failing to do so.

418 So.2d at 500.

Together, the Fifth Circuit in *Alexander v. United States, supra* and the Louisiana Supreme Court in *Kent v. Gulf States Utilities Co., supra* reinforce the conclusion that there are only two exceptions to the general rule: one for ultrahazardous activities and the other for exercise of control by the principal over the work performed by its contractors.

■ In any case, plaintiff has proffered no evidence that Exxon knew of the dangerousness of silica abrasive material and failed to warn. There is no affidavit—only two exhibits of unknown authenticity, veracity, relevance, and meaning. Exxon has carried the burden of showing that Touchstone's employers were independent contractors over which Exxon exercised no control and plaintiff has not offered any evidence to controvert this.

### 4. Party In Interest

■ While plaintiff brought this action on behalf of herself and her major children, an action for wrongful death is intended to compensate only the surviving spouse and dependents of a decedent. *Sea-Land Services, Inc. v. Gaudet*, 414 U.S. 573, 579 & n. 5, 584, 94 S.Ct. 806, 811 & n. 5, 814, 39 L.Ed.2d 9 (1974); *see Moragne v. States Marine Lines*, 398 U.S. 375, 382, 90 S.Ct. 1772, 1778, 26 L.Ed.2d 339 (1970). Major children are presumed not to be dependents and are therefore not entitled to maintain a wrongful death action. There is no evidence in this record that these major children were in any way dependent upon the decedent. Moreover, even if they were, Rule 17(a) of the Federal Rules of Civil Procedure requires that actions be brought by the real party in interest. Therefore, if plaintiff's major children indeed had a cause of action, it is they who are the parties in interest and must assert those claims.

Consequently, I find plaintiff's claims on behalf of her major children must be dismissed and that summary judgment is appropriate in favor of Exxon. Accordingly,

IT IS ORDERED that the motion of Exxon Corporation for summary judgment be **GRANTED.**

IT IS FURTHER ORDERED that the claims of plaintiff on behalf of Shirley Touchstone Tillman and Joe J. Touchstone, Jr. be **DISMISSED.**

IT IS FURTHER ORDERED that counsel for plaintiff show cause on Wednesday, November 14, 1984 at 9:15 a.m. why sanctions should not be imposed for failure to comply with Rule 11 of the Federal Rules of Civil Procedure.

Let judgment be entered accordingly.