446 So.2d 775 (1982)
Arthur QUICK
v.
MURPHY OIL COMPANY, et al.
No. 13258.
Court of Appeal of Louisiana, Fourth Circuit.
December 1, 1982.
On Rehearing January 25, 1984.
Writs Denied April 2, 1984.
*776 Michael A. Fenasci, New Orleans, for plaintiff-appellant.
Linda S.A. Burke, Rene A. Curry, Jr., New Orleans, for defendants-appellees.
William S. Marshall, Jr., Alan Dean Weinberger, New Orleans, La., amicus curiae.
Before WARD, BYRNES and KLEES, JJ.
WARD, Judge.
Arthur Quick, a long-time employee of Murphy Oil Corporation, brought this suit in the Twenty-Fourth Judicial District Court claiming damages from sixty-six defendants for injuries which he allegedly received during his employment.[1] Among the sixty-six defendants are his former employer, Murphy Oil Corporation, and its executive officers: M.J. Leumas, Dave Thomas, James O'Neal, Jr., John Chutz, III, Leonard King, Elliott Smith, and Camille Trahan. Quick's lawsuit alleges negligence and, alternatively, intentional torts and asks for damages for asbestosis, a lung disease, which Quick claims was caused by his intermittent exposure to asbestos during the twenty-five years he was employed by Murphy Oil Corporation. In defense, Murphy Oil Corporation and the executive officer group filed exceptions of no right and no cause of action. The Trial Judge sustained the exceptions and dismissed Quick's lawsuit against these defendants. Neither the Trial Judge's ruling nor this appeal affects the remaining defendants whom Quick has described as the Asbestos Group.
Quick appeals the Trial Court's judgment of dismissal, urging two assignments of error. Quick argues that the Trial Judge erred in retroactively applying Act 147 of 1976 which amended the Worker's Compensation Law by granting immunity to fellow employees from claims of negligence. The act permits claims against fellow employees based on intentional torts, and Quick also contends that the Trial Judge erred in sustaining the exception of no right or cause of action, arguing that the allegations set forth in his petition sufficiently state a cause of action based on intentional torts.
We do not believe that the Trial Judge erred when he held that Act 147 of 1976 bars Quick's claims of negligence. We, however, reverse the Trial Judge's ruling on the exception of no cause of action insofar as the allegations of intentional torts; we find that the allegations of Quick's petition are sufficient to state a cause of action for intentional torts.
As to the claims for negligence, Quick contends that the Trial Judge erroneously applied the amending act retroactively to a claim based on continuous tortious acts that occurred before the amendment and during his 25 years of employment, even though it is well settled that Act 147 of 1976 may not be applied to a cause of action that arose before its effective date. Green v. Liberty Mutual Insurance Company, 352 So.2d 366 (La.App. 4th Cir.1977), writ denied, 354 So.2d 210 (La.1978). We believe, nonetheless, that the question is not retroactive application, but is whether the cause of action arose before Act 147 of 1976.
A cause of action has been defined by the Louisiana Supreme Court as, "the state of facts which gives a party the right to judicially assert an action against a defendant." Trahan v. Liberty Mutual Insurance Company, 314 So.2d 350, 353 (La. *777 1975). Hence, a cause of action does not arise until the injury becomes known.
In a case similar to this, Smith v. Hurd, 408 So.2d 357 (La.App. 1st Cir.1976), an executive officer suit based on negligence, it was held that a widow's cause of action for wrongful death could not arise prior to her husband's death which occurred after the amendment. The First Circuit Court of Appeal rejected the argument that the claim arose when the injuries from exposure to sand and dust particles were inflicted prior to the effective date of the amendment and held that the exception of no cause of action or no right of action was properly sustained by the Trial Court.
In the instant case, Quick does not claim either that the injury manifested itself or that he contracted asbestosis before the effective date of Act 147 of 1976. The record reflects that asbestosis was discovered after Quick was examined by physicians in February of 1980, four years after Act 147 of 1976.
Because the Supreme Court's definition of a cause of action is controlling and because we agree with the First Circuit's decision in Smith v. Hurd, supra, we find that Quick's cause of action did not arise until asbestosis was diagnosed in 1980, four years after the effective date of Act 147 of 1976. Therefore, the Trial Judge was correct in his application of Act 147 of 1976 which bars claims against fellow employees based on negligence.
In his second assignment of error, Quick argues that even if Act 147 is applicable and immunizes executive officers from liability for injuries caused by their negligence, it does not immunize these officers from claims for injuries resulting from their intentional acts. He contends that the Trial Judge erred when he ruled that Quick's petition did not state a cause of action under this theory.
In his petition, Quick alleges:
Each of the defendants, executive officers, directors or shareholders knew the identity of the products being used at the Murphy Oil Company facility and they knew that the products that were used at that facility were extremely dangerous and would cause serious and/or fatal injuries to any person handling those materials.
Each of the defendant executive officers personally knew that the plaintiff was handling extremely dangerous materials containing asbestos from August of 1955 to February of 1980. Each of the defendant executive officers, directors, or shareholders personally knew that the plaintiff had not been provided with the required and/or necessary and/or adequate equipment for the handling of these extremely dangerous materials containing asbestos.
Likewise, each of the defendants, executive officers, directors or shareholders knew that the plaintiff had not been adequately warned concerning the hazards of handling extremely dangerous materials containing asbestos.
[Arthur Quick's] injuries and his damages resulting therefrom, were caused by defendant's executive officers, directors or shareholders intentional acts, in that the injurious consequences were substantially certain to follow from their acts.
In Bazley v. Tortorich, 397 So.2d 475 (La.1981), the Louisiana Supreme Court defined "an intentional act":
... The meaning of "intent" is that the person who acts either (1) consciously desires the physical result of his act, whatever the likelihood of that result happening from his conduct; or (2) knows that that result is substantially certain to follow from his conduct, whatever his desire may be as to that result. Thus, intent has reference to the consequences of an act rather than the act itself. Id. at 481.
The Court further noted:
... Only where the actor entertained a desire to bring about the consequences that followed or where the actor believed that the result was substantially certain to follow has an act been characterized as intentional. Id. at 481.
*778 For the purpose of ruling on an exception of no cause of action, all well-pleaded allegations are accepted as true, and any doubts must be resolved in favor of the sufficiency of pleadings to state a cause of action. Guy Scroggins, Inc. v. Emerald Exploration, 401 So.2d 680, 684 (La.App. 3rd Cir.1981), writ denied, 404 So.2d 1257 (La.1981). The allegations of Quick's petition may be interpreted to allege that the executive officers did an intentional act or intentionally abstained from acting with the knowledge that Quick's injuries were substantially certain to follow. We conclude that these allegations are sufficient to state a cause of action based on intentional acts. Therefore, Quick should have an opportunity in trial or summary proceedings to prove his allegations of intentional torts. Accordingly, insofar as the petition alleges intentional torts, we reverse the Trial Court and overrule defendant's exception of no cause or right of action.
For the foregoing reasons, the judgment of the Trial Court dismissing Quick's claims based on negligence is affirmed. The judgment of the Trial Court dismissing Quick's claims based on intentional torts is reversed.
AFFIRMED IN PART. REVERSED IN PART.

ON REHEARING GRANTED
We granted a rehearing to reconsider the question: Is Quick's cause of action barred by Act 147 of 1976 which amended the worker's compensation law by granting immunity to fellow employees from claims of negligence? After our initial decision in this case, other claims for injuries from asbestosis or silicosis have been brought to this and other appellate courts of this state which raise the same question. Consequently, to promote internal consistency within this circuit, we have delayed considering anew this interesting question until we could also consider the arguments made in these other cases.
We now believe our original decision was wrong and reverse the Trial Court's ruling which held that Quick's cause of action was barred by the 1976 amendment to the worker's compensation law.
Another panel of this court has considered this exact question, and although that case involved the disease of silicosis, and did not arise in exactly the same factual context, we find the decision to be persuasive. See Faciane v. Seligman, et al., 446 So.2d 770 (1984). That decision holds in pertinent part:
There is no dispute among medical authorities, or among the parties to this suit, that regardless of the time at which the disability caused by silicosis arises, the disease process itself invariably begins years earlier. Thus the question posed by this appeal is; when does a plaintiff's cause of action for damages caused by silicosis arise?
Appellee argues strenuously that a cause of action accrues only when the disease manifests itself by physical symptoms and disability. This contention is based on the theory that negligence without injury or damage is not actionable. While this is a correct statement of the law, it begs the question at hand which asks what is injury, in a legal sense, in cases of silicosis, and when does that injury occur?
Appellant maintains that injury occurs with each inhalation of silica dust. The result of such a conclusion would be the creation of a cause of action at each exposure. The obvious problem with this approach is that the injurious effect of breathing silica dust is generally viewed as the result of exposure over a period of time rather than from a single exposure.
Our understanding is that everyone, especially in urban environments, inhales silica particles without substantial harm. The body's natural cleansing mechanism is adequate to handle some degree of exposure without harm. It is only when the body's defense mechanisms break down that the real damage, which those particles can cause, begins. To this extent we do not feel any actionable injury *779 occurs by the mere inhalation of silica particles.
What then should courts do when faced with the problem of when a cause of action for silicosis arises? Resolution of this question seems to hinge primarily on how one defines the injury which, coupled with defendant's negligence, gives rise to a cause of action.
The trial judge took the position that injury does not occur until the disease is diagnosed or manifested by physical symptoms. While this theory has the advantage of being easy to apply, it ignores the reality of the situation. There is no doubt whatsoever that by the time a plaintiff is diagnosed as having silicosis, the disease has been present for some time. It would be the purest fiction to assert that no injury has occurred before the date of manifestation. Injury occurred when the cumulation of exposure reached the point where the plaintiff contracted the disease. The fact that the symptoms of the disease manifest themselves years later does not change the essential fact that the damage has already been done.
We have concluded that in the unique circumstances presented by cases of cumulative diseases such as silicosis, it is the contraction of the disease which creates a cause of action and not the later manifestation of the consequences of that disease. To hold otherwise would be to ignore the facts. While the ultimate manifestation of the disease by physical disability may be convenient, easily fixed point at which to find a cause of action accrues we cannot disregard the fact that, but for the earlier contraction of the disease, there would be no symptoms to manifest themselves.
The problem with this approach is that it is extremely difficult to accurately fix the point in time at which the disease is contracted. This difficulty does not change the unavoidable reality that the disease existed in the sense that irreversible biological changes which inevitably result in disease and disability take place before manifestation of the condition by way of disabling symptoms. There is universal medical opinion that the date of detection is not the date at which the disease is contracted.
It seems implicit from much of the medical testimony that once silica dust has so damaged and maimed the body that the fibrogenic effects of silica inhalation progress independent of further exposure, a disease has been contracted. It is at this point that the consequences of exposure to silica become unavoidable. The victim's body has been injured just as surely as if it had been hit by a truck.
We realize that this is not a point in time which is subject to easy determination. However, for purposes of an exception of no cause of action, which is the issue before us in this case, the exact point is not essential. The plaintiff need only allege that at some time prior to October 1, 1976, the effective date of the amendment of R.S.23:1031, he contracted silicosis. The trial judge was clearly wrong in ruling that appellants cause of action did not arise until the date on which his disease was diagnosed.
* * * * * *
Pleadings should be liberally construed in favor of stating a cause of action. Neblett v. Placid Oil Co., 257 So.2d 167 (La.App.Cir.1971), application denied [260 La. 1121] 258 So.2d 376. In ruling on an exception of no cause of action all well pled facts in the petition must be accepted as true, and any doubts resolved in favor of a finding that the pleadings are sufficient to state a cause of action. Concerned Citizens of Rapides Parish v. Hardy, 397 So.2d 1063 (La.App. 3rd Cir.1981); Landry v. Landry, 339 So.2d 360 (La.App. 1st Cir.1976). An exception of no cause of action should be maintained only where the allegations of fact in the petition disclose no cause of action on any ground whatsoever. Leatherman v. Parish of East Baton Rouge, 275 So.2d 806 (La.App. 1st Cir.1973). This is because the peremptory exception of no cause of action is intended to test the legal sufficiency of the petition and *780 not the evidence which may or may not be available to prove allegations of the petition at trial. Vancouver Plywood, Inc. v. Sumrall, 415 So.2d 625 (La.App. 1982); Hero Lands Co. v. Texaco, Inc., 310 So.2d 93 (La.1975). Indeed the policy behind liberal construction of pleadings is to give plaintiffs the opportunity to present evidence in support of their claims. Hero Lands Co. v. Texaco, Inc., supra.
We find no reason to distinguish Quick's cause of action for asbestosis, from Faciane's cause of action for silicosis.
We do distinguish, however, the time when a cause of action arises from when prescription begins to run. A cause of action arises when injury occurs, while prescription begins to run only when the injured party becomes aware of his injury.
We recognize there exists persuasive authority for the view that Quick's action was barred. Apparently this same question has troubled other courts and has been certified to the Louisiana Supreme Court. See Ducre v. Mine Safety Appliances, et al, 573 F.Supp. 388, United States District Court, Eastern District of Louisiana.
In the meantime, for the reasons expressed above, we reverse and remand for trial on the merits.
REVERSED AND REMANDED.
NOTES
[1] Arthur Quick died after his suit was filed.