554 So.2d 852 (1989)
Mitchell L. LEBLEU, Sr., Plaintiff-Appellee,
v.
SOUTHERN SILICA OF LOUISIANA, et al., Defendants-Appellants.
No. 88-664.
Court of Appeal of Louisiana, Third Circuit.
December 20, 1989.
Rehearing Denied January 25, 1990.
*853 Baggett, McCall, Wm. B. Baggett, Jr., Lake Charles, for plaintiff-appellee.
Onebane, Donohoe, Bernard, Torian, Diaz, McNamara & Abell, Patrick J. Hanna, Lafayette, for Lone Star.
Duplass, Witman & Zwain, Metairie, for Pulmosan Safety Equipment Co.
Taylor, Porter, Brooks & Phillips, John I. Moore, John Parker, Baton Rouge, Jones, Tete, Nolen, Hanchey, Swift & Spears, Ken Spears, Robert Tete, Lake Charles, for Cities Service Co.
Preis, Kraft, Laborde & Daigle, Chris Philipp, Lafayette, for Southern Silica of Louisiana.
Stockwell, Sievert, Viccellio, Clements & Shaddock, Paul Veazey, Lake Charles, for PPG Industries.
Petre, Yoes, Kay & Halley, Henry Yoes, Lake Charles, for Clemtex.
Raggio, Cappel, Chozen & Berniard, Keith Prudhomme, Lake Charles, for Thorstenburg.
Tom Sanders and Rebecca Young, Lake Charles, for Liberty Mut.
Scofield, Bergstedt, Gerard, Mount & Veron, John R. Pohorelsky, Lake Charles, for Reliance.
Plauche, Smith & Nieset, Chris Ieyoule, Lake Charles, for Speciality Sand.
Wm. Collings, Lake Charles, for USF & G.
Before GUIDRY, LABORDE, YELVERTON, KNOLL and KING, JJ.
*854 KNOLL, Judge.
This appeal involves a pretrial procedural dispute among the defendants concerning third-party demands against executive officers. The primary issue is whether we will allow third-party plaintiffs, Lone Star Industries, Inc. (Lone Star) and Pulmosan Safety Equipment Company (Pulmosan), the right of contribution, which is embedded in our civilian tradition under the doctrine of legal subrogation, or follow a United States Fifth Circuit Court of Appeal case, Ducre v. Executive Officers of Halter Marine, Inc., 752 F.2d 976 (5th Cir. 1985), and deny third-party plaintiffs the right to demand contribution against certain executive officers of Sline Industrial Painters, Inc. (Sline), PPG Industries, (PPG) and Cities Service Company (Cities Service). With all due respect to the esteemed Fifth Circuit, for reasons stated hereafter we will not follow the Ducre decision, finding that Ducre ignores Louisiana subrogation laws and in effect applies the 1976 amendment to LSA-R.S. 23:1032 retroactively, which is prohibited under the Louisiana Constitution.
Other issues raised by Lone Star and Pulmosan are: (1) whether the trial court's denial of their indemnity claims was premature; and, (2) whether the trial court improperly denied them the opportunity to show that PPG, Cities Service and their executive officers, were joint tortfeasors. We also reverse on these issues.
This is one of ten silicosis suits consolidated on appeal. Although the issues of each case are addressed in the text of this opinion, we render separate opinions in the consolidated cases. We append a listing of the consolidated cases to this opinion.

FACTS
Lone Star and Pulmosan are two of nineteen defendants sued by ten victims of silicosis disease. Lone Star manufactured the silica, and Pulmosan manufactured certain safety equipment plaintiffs used. The plaintiffs allege that they contracted silicosis as a result of exposure to silica dust during their employment as sandblasters with Sline over a period of time from 1941 to 1985 inclusive. All the plaintiffs allege exposure prior to 1976. One of the plaintiffs total exposure to silica dust was prior to 1976. In 1985 and 1986, the plaintiffs sued the nineteen defendants composed of manufacturers, suppliers, distributors, etc. of products and equipment used in sandblasting. Lone Star and Pulmosan filed third-party demands for indemnity and contribution against PPG and Cities Service directly, as well as the executive officers of Sline, PPG and Cities Service, and the insurers of all parties. The third-party demands in the suits were identical and were met with peremptory exceptions of no cause of action based on the 1976 amendments to LSA-R.S. 23:1032 prohibiting suits against executive officers unless based on an intentional tort. The exceptions of no cause of action were consolidated for hearing and sustained by the trial court. Concerning the contribution issue, the trial court relied upon the Fifth Circuit's decision in Ducre. As to the indemnity issue, it concluded that indemnity was not available to the third-party plaintiffs because their fault was active whereas the third-party defendants' alleged fault was only passive. And lastly, the trial court found that if PPG and Cities Service were plaintiffs' statutory employers, they were immune to the third-party plaintiffs' action under LSA-R.S. 23:1032.

LEGAL SUBROGATION
Pulmosan and Lone Star first contend that the trial court erred when it chose to follow Ducre in its dismissal of their claims against the executive officers of Sline, PPG, and Cities Service. They argue that the Fifth Circuit has overlooked the well recognized principle of legal subrogation upon which a claim for contribution is based. We agree. We find the Ducre decision overlooks our civil law concept of subrogation, and improperly focuses on the time when a third-party plaintiff may demand contribution from a solidary obligor, i.e., when Lone Star and Pulmosan have satisfied fully the obligation. In our treatment of this issue, we apply our subrogation laws by focusing on what rights Pulmosan *855 and Lone Star would be entitled to as joint tortfeasors with other defendants. If, after trial on the merits, it is determined that plaintiffs have a cause of action against the executive officers of their employer corporations, Sline, et al., along with Lone Star and Pulmosan, then Pulmosan and Lone Star, via third-party demands, have a reciprocal right through subrogation to step into the plaintiffs' shoes and seek contribution from the executive officers. By sustaining the no cause of action, Lone Star and Pulmosan are denied this right. However, the plaintiffs are allowed to sue the executive officers, because their cause of action allegedly arose before 1976, and in fact the plaintiffs did amend and sued the executive officers after the ruling on this exception.
LSA-C.C.P. Art. 927 provides for the peremptory exception of no cause of action. This exception is designed to test the legal sufficiency of the petition rather than the evidence which may or may not be available to prove the allegations at trial. Darville v. Texaco, Inc., 447 So.2d 473 (La. 1984). All well pleaded allegations of the petition must be accepted as true, and any doubts as to the sufficiency of the petition must be resolved in favor of finding that the pleadings are sufficient to state a cause of action. Concerned Citizens of Rapides Parish v. Hardy, 397 So.2d 1063 (La.App. 3rd Cir.1981). Only if the allegations of fact in the petition exclude every reasonable hypothesis other than the premise upon which the defense is based or disclose no cause of action on any ground whatsoever may an exception of no cause of action be maintained. Darville, supra.
In Ducre, the plaintiffs were victims of silicosis. In deciding the exceptions of no cause of action filed by the executive officers based on the 1976 amendment to LSA-R.S. 23:1032 the Fifth Circuit divided the consolidated cases before it into those where the plaintiffs sued the officers directly (Avondale cases) and those where the defendant third-partied the executive officers (Southern-Halter cases). The court noted that the law in Louisiana is in a state of flux as to when a plaintiff's cause of action for silicosis arises. However, based on Owens v. Martin, 449 So.2d 448 (La.1984), and Quick v. Murphy Oil Co., 446 So.2d 775 (La.App. 4th Cir.1984), writ denied, 447 So.2d 1074 (La.1984), it reasoned that the cause of action for silicosis may arise when the plaintiff "contracts" the disease. Quick defined this time as when the dust had so damaged the body that the fibrogenic effects of silica inhalation would progress independent of further exposure. As the court stated in Ducre, and with which we agree, Louisiana law is not settled as to when the plaintiff's cause of action arises in an occupational disease case. The "contraction" theory at least received the qualified approval of our Supreme Court in Quick when the court denied writs reserving its right to examine the "contraction" theory later.
Since in Ducre, as the plaintiffs in the case sub judice,[1] allege exposure to silica both before and after the amendment to LSA-R.S. 23:1032, the Fifth Circuit held that there is the possibility that plaintiffs' injuries arose prior to the 1976 grant of immunity to executive officers. Because of this possibility, the Fifth Circuit overruled the exception of no cause of action against the executive officers in Ducre's Avondale cases. To this extent we agree with the Ducre decision.
Our area of disagreement with Ducre is in its analysis of the contribution claims asserted by the third-party plaintiffs against the executive officers in the Southern-Halter cases delineated in Ducre. Relying upon Brown v. New Amsterdam Casualty Company, 243 La. 271, 142 So.2d 796 (1962), the Ducre court found that the third-party plaintiffs' causes of action for contribution against a joint tortfeasor arise when judicial demand is made on a joint *856 tortfeasor. The Ducre court reasoned that since the Southern-Halter plaintiffs filed suit subsequent to the passage of the 1976 amendment to LSA-R.S. 23:1032, the manufacturers (third-party plaintiffs) could not maintain an action against the executive officers who now had immunity.
The Brown decision dealt with an amendment to LSA-C.C. Art. 2103 enacted in 1961 that allowed a third-party action by a tortfeasor against a joint tortfeasor who was not initially sued by the injured plaintiff. Prior to the amendment to C.C. Art. 2103, a defendant could not enforce his right to contribution against a joint tortfeasor unless and until he and his co-tortfeasors had been cast in judgment in solido. This was because once compelled to pay the entirety of the obligation, he became subrogated to the plaintiff's rights against the solidary obligors for their share of the damages. In 1961, the Third Party Practice act went into effect to allow a defendant to compel the appearance in the suit of other potential solidary obligors. The amendment changed the timing of a contribution suit, but not the basis for the action. In other words, the defendant was no longer at the mercy of the plaintiff's whim as to whether plaintiff may or may not bring in other defendants in the suit. The defendant could add potential solidary obligors, but if there was a legal impediment to plaintiff's rights against them, the defendant would not be able to recover from them.
In Brown, the accident occurred pre-amendment but suit was post-amendment. Defendant third-partied the insurer of one of the plaintiffs alleging that the insured was a joint tortfeasor. Third-party defendant filed an exception of no cause of action, urging that the amendment to LSA-C.C. Art. 2103 was substantive and since prior to the amendment a tortfeasor could not enforce contribution against a joint wrongdoer until both had been cast in judgment, third-party plaintiff had no cause of action. The Brown court overruled the exception of no cause of action, stating that although the injured plaintiff's cause of action against the tortfeasors came into being at the time of the accident, the claim of the joint tortfeasor for contribution arose when judicial demand was made on either or both as a joint tortfeasor, not when the tort was committed. Since the suit was filed after the amendment to C.C. Art. 2103, the defendant could maintain a third-party action.
Relying upon Brown and a similar case, Lanier v. T.L. James & Co., 148 So.2d 100 (La.App. 1st Cir.1962), the Ducre court concluded that the third-party plaintiffs' claim for contribution was barred by the amendment to LSA-R.S. 23:1203, stating:
"It is abundantly clear, then, that for purposes of determining the applicability of a statute which gives rise to a new form of a cause of action (for that was the effect of article 2103 as amended), the cause of action in contribution arises when judicial demand is made on one of the joint tortfeasors. Since this principle derives from the nature of the theoretical source of the contribution action itself, we see no reason why it should not also operate when the applicability of a different kind of statute, such as Sec. 23:1032, is in issue. We must conclude that in the Southern-Halter cases the manufacturers' causes of action for contribution arose when Julius Ducre filed suit against them." Id. at 989.
We find that the Ducre court misapplied Brown, confusing the procedural right to claim contribution with the substantive right of legal subrogation of the plaintiffs' claim. The Fifth Circuit's confusion of the procedural right to claim contribution was addressed and criticized by Bruce Schewe in Obligations, 47 La.L.Rev. 381-382 (1986). We find this law review article succinctly shows our entrenched civil law concept of subrogation. First quoting from Brown and then discussing Ducre's appreciation of Brown, Schewe stated:
"`It is true that as of that time the injured party's right and cause of action against either or both of two joint tortfeasors come into being; and conversely, the obligation of each of the latter to the claimant also commences. On the other hand, the rights and obligations as between the joint wrongdoers do not then *857 arise, because they are not created by virtue of the commission of the tort and of the provisions of Revised Civil Code Article 2315. Rather, they spring from the principle of contribution, enunciated in Article 2103 and our jurisprudence, which is required of solidary obligors when one has been compelled to pay the full amount of the obligation. See Sincer v. Bell, 47 La.Ann. 1548, 18 So. 755 [(1895)] and Quatray v. Wicker et al., 178 La. 289, 151 So. 208 [(1933)]. And it is only after judicial demand has been made on one of two or more solidarily obligated tort feasors that he can have any possible interest in seeking contribution.'
Accordingly, the opinion of the court in Brown stands precisely for the conclusion opposite the one reached by the panel in Ducre. In other words, the right to demand contribution vests in a debtor in solido when he has satisfied fully the obligation. The paying obligor then is subrogated to the position of the creditor, and a claim for contribution or indemnification is ripe. Of course, to truncate procedurally the unwieldly system of staying the demand for contribution or indemnification until one solidary debtor completely performs in favor of the creditor, a third-party demand may be asserted much earlierduring the litigation of the creditor's action." (Footnote omitted.)
Our jurisprudence clearly establishes that the source of contribution is subrogation. Thompson v. Cane Garden Apt., 480 So.2d 373 (La.App. 3rd Cir.1985); Sellers v. Seligman, 463 So.2d 697 (La.App. 4th Cir. 1985), writ denied, 464 So.2d 1379 (La. 1985); Harvey v. Travelers Ins. Co., 163 So.2d 915 (La.App. 3rd Cir.1964); Quatray v. Wicker, 178 La. 289, 151 So. 208 (1933).
Louisiana law provides that subrogation takes place by operation of law in favor of an obligor who pays a debt he owes with others and who has recourse against those others as a result of the payment. LSA-C.C. Art. 1829.
An obligor who pays a debt he owes with others is legally subrogated to the rights of the obligee, if he brings an action against the others as a result of that payment. LSA-C.C. Art. 1829 and Comment (c) thereunder.
In the case sub judice, Pulmosan and Lone Star are seeking contribution by trying to enforce plaintiffs' causes of action for pre-1976 injuries against the executive officers to which they will be subrogated, if case in solido with such executive officers and actually pay the judgment. Since at this stage of the litigation, the various plaintiffs have stated a cause of action against their corporations' executive officers because of their having contracted silicosis prior to 1976, it is clear that the potential for solidary liability among the executive officers, Pulmosan and Lone Star certainly exists. Accordingly, subrogation would take place by operation of law in favor of Pulmosan and Lone Star. Ducre ignores this legal tenet.
Moreover, we find that by following Ducre the trial court in effect impermissibly applied LSA-R.S. 23:1032 retroactively in violation of La. Const. art. 1, Sec. 23.
The third-party defendants, relying upon Lanier, supra, and Ferguson v. Lankford, 374 So.2d 1205 (La.1979), argued to the trial court that a third-party plaintiff seeking contribution does not always step into plaintiff's shoes. Accordingly, the trial court held that although the plaintiffs may have a claim against the executive officers of Sline, PPG, and Cities Service, third-party plaintiffs, Pulmosan and Lone Star did not necessarily have reciprocal rights against those executive officers. We disagree.
In Lanier, the fact situation presented was identical to that addressed in Brown. Of importance in Lanier was its holding that the 1960 amendment to LSA-C.C. Art. 2103, like our amendment in the case sub judice to LSA-R.S. 23:1032, was substantive and could not be applied retroactively and did not affect defendant's vested rights at the time the cause of action for contribution arose. Id. page 105.
In Ferguson, the plaintiff filed a claim with the insurance commissioner, pursuant to the medical malpractice act of 1975, *858 against her treating physician and a hospital alleging the joint negligence of both parties. The physician was not a qualified health care provider; thus, when plaintiff filed suit against the doctor more than one year after the injury, the claim was dismissed based on prescription. The Louisiana Supreme Court held that prescription on the plaintiff's claim against the physician was not suspended by filing with the insurance commissioner because the physician was not a qualified health care provider. The plaintiff argued that timely filing with the insurance commissioner, which alleged the joint negligence of the hospital and physician, was sufficient to interrupt prescription based on the solidary liability which existed between the hospital and the physician. The court held:
"If prescription running against plaintiff's claim has not been interrupted, the obligation of the doctor to the hospital for contribution (if, indeed both are tort feasors) would not have prescribed, in spite of the fact that he had been liberated from liability to the injured patient.
It would seem to follow logically that, since `every act, which interrupts prescription with regard to one of the creditors in solido avails the other creditor [creditors], every interruption with regard to one of the solidary debtors would avail the creditor. The code does not so provide, nor does our jurisprudence. Suit against one debtor bound in solido will interrupt prescription as to the others (as will an acknowledgement). C.C. 2097; R.S. 9:5801. But if one of the acts, described in code or statutes as interrupting prescription running in favor of a debtor, does not occur, there is no interruption. Here there was no suit, in any court, and no acknowledgement."
We find that Ferguson is not applicable to the case sub judice. Although the plaintiff in Ferguson had a legal right against the physician, to which the hospital was subrogated by virtue of solidary liability, her enforcement of that legal right was procedurally barred by prescription. It is well settled that prescription does not extinguish the legal right, it merely precludes the plaintiff from enforcing that right because of the passage of time. Sewerage & Water Board of New Orleans v. Sanders, 264 So.2d 270 (La.App. 4th Cir.1972), writ denied, 262 La. 1157, 266 So.2d 443 (1972). Therefore, third-party defendants' reliance upon Ferguson for the proposition that a joint tortfeasor is not subrogated to the substantive rights of the plaintiff is misplaced. In Ferguson, even though the plaintiff had a substantive right against the doctor, prescription barred the plaintiff's enforcement of that substantive right. On the other hand, the hospital was subrogated to the legal rights of the plaintiff, but was not procedurally barred by prescription.
Accordingly, for the reasons assigned hereinabove, we decline to follow Ducre. Therefore, the executive officers' exceptions of no cause of action filed against Lone Star and Pulmosan on the issue of contribution are overruled and set aside.

INDEMNITY
Pulmosan and Lone Star further contend that the trial court improperly sustained the executive officers' peremptory exceptions of no cause of action on their claim for indemnity.
Summarizing the law on indemnity, we stated in Casson v. Hartford Fire Ins. Co., 548 So.2d 66 (La.App. 3rd Cir.1989), at page 70:
"Contribution and indemnity are different legal tenets. One guilty of fault is not due indemnity." As stated in Truxillo [v. Gentilly Medical Bldg., Inc.] [225 So.2d 488 (La.App. 4th Cir.1969) ]:
"`The key to the applicability of the codal principle of indemnity is of course the determination that the affair "concerns" only one of two or more solidarily liable parties within the meaning of LSA-C.C. art. 2106 and therefore, as between themselves, the other or others are only the sureties of that one. Otherwise, the general rule of contribution only, art. 2104 must be applied."'
The Supreme Court in Green v. Taca International Airlines, 304 So.2d 357 *859 (La.1974), summed up the principle as follows:
"`Indemnity shifts the entire loss from a tortfeasor only technically or constructively at fault to one primarily responsible for the act that caused the damage ... Contribution apportions the loss among joint tortfeasors and requires each to pay his virile share of the damages that result from the wrong."' (Citations omitted).
Indemnity, unlike contribution, is not dependent upon subrogation to the right of the creditor, but finds its basis in the concept of unjust enrichment, i.e., the party primarily at fault is unjustly enriched when one held liable vicariously or by reason of technical fault discharges the indebtedness. As stated in Truxillo, supra, at page 495:
"`As between creditor and surety ("security"), the surety is governed by principles applicable to debtors in solido, art. 3045; but as between debtor and surety the surety (the master) has the right (1) to subrogation to the creditor's right against the debtor (servant) if the surety (master) has paid the debt, arts. 3052, 3053; and, (2) to indemnity against the debtor (servant) if the surety (master) has not paid the debt but suit has been filed against him ..."') (Emphasis omitted).
The plaintiffs have charged Pulmosan and Lone Star with negligence, strict liability in the manufacture, distribution and sale of defective products, and in failure to warn. Although we agree with the trial court's statement that entitlement to indemnity is based on a finding of active or passive negligence, we must bear in mind that this issue is raised under a peremptory exception. Accordingly, it is being judged on the allegations raised in the petitions and without the benefit of evidence. At this stage of the litigation, we find that the liability of the various parties is a disputed fact. On this basis, we find that the trial court prematurely granted the peremptory exception of no cause of action on the issue of indemnity. Casson, supra. Therefore, we reverse the trial court's dismissal of Pulmosan and Lone Star's third-party claims for indemnity on an exception of no cause of action.

JOINT TORTFEASORS
Pulmosan and Lone Star also filed third-party demands against Cities Service and PPG, the two primary companies who employed the Sline employees on their premises, their executive officers, and the insurers of Cities Service and PPG. Pulmosan and Lone Star contended that Cities Service and PPG were the statutory employers of the plaintiffs or, in the alternative, if they were not the plaintiffs' statutory employers, they were liable as joint tortfeasors, together with their executive officers, for indemnity and/or contribution.
The trial court ruled that neither the main nor alternative claim against Cities Service and PPG stated a cause of action. As to the first contention that Cities Service and PPG were the statutory employers of plaintiffs, it found that accepting Pulmosan and Lone Star's allegations as true, under LSA-R.S. 23:1032 statutory employers are immune from tort liability. With regard to the alternative claim, the trial court concluded that absent an employment relationship among the plaintiffs, Cities Service and PPG, a principal is not liable for injuries caused by the acts of an independent contractor and owes no duty to the contractor's employees either to insure their safety or to discover or correct hazardous conditions created by the contractor.
On appeal, Pulmosan and Lone Star focus solely on the trial court's dismissal of their alternative claims against Cities Service and PPG, and their executive officers.
Numerous grounds were alleged for the imposition of liability of these third-party defendants. At this stage of the litigation, upholding Pulmosan and Lone Star's allegations that PPG and Cities Service and their executive officers are liable for conducting ultrahazardous activities, and that PPG and Cities Service were negligent in promulgating and enforcing safety programs, we find the trial court prematurely *860 granted PPG and Cities Service's peremptory exceptions of no cause of action.
In Williams v. Gervais F. Favrot Co., 499 So.2d 623, 625 (La.App. 4th Cir.1986), writ denied, 503 So.2d 19 (La.1987), our brethren of the Fourth Circuit summarized liability in the situation presented herein:
"As a general rule, property owners are not liable for the negligence of independent contractors who are performing work for the owner. In determining whether the person performing the work is an employee or an independent contractor the focus of the inquiry is directed at gauging the degree of the contractor's independence or subserviency. Davidson v. American Drug Store, 175 So. 157 (La.App.Orleans 1937). Factors which are relevant to this inquiry include the independent nature of the contractor's business, the existence of a contract for performance of a specific job, payment of a fixed price for the work, employment by the contractor of assistants who are under his control, the furnishing of necessary tools and materials by the contractor and his right to control the conduct of his work while in progress. Lacaze v. Beeson, 44 So.2d 493 (La.App. 1st Cir.1950). The most important of these factors is the degree of control which the owner can exercise over how the contractor performs the work. Olano v. Leathers, 2 So.2d 486 (La.App. 1st Cir.1941). Thus, where the contract provides that the owner's control over the contractor is limited to providing plans and specifications and his only right is to insist that the job be performed in accordance with those plans and specification, an independent contractor relationship exists and the owner is not vicariously liable for the contractor's negligence. Crutti v. Frank, 146 So.2d 474 (La.App. 4th Cir.1962); Arledge v. Royal Globe Insurance Co., 401 So.2d 615 (La. App. 3rd Cir.1981).
This general rule of non-liability has two exceptions: first, the owner may not avoid liability if the work undertaken by the independent contractor is inherently or intrinsically dangerous; second, the owner may be held liable if he exercises control over the contractor's methods of operation or gives express or implied authorization to an unsafe practice. Ewell v. Petro Processors of La. Inc., 364 So.2d 604 (La.App. 1st Cir.1978) writ denied 366 So.2d 575 (La.1979)."
The jurisprudence further provides that ultrahazardous activities are determined as a matter of policy, after a balancing of claims and interests, a weighing of the risk and the gravity of harm, and the consideration of the individual and societal rights and obligations. Langlois v. Allied Chemical Corporation, 258 La. 1067, 249 So.2d 133 (1971).
Our research in Louisiana jurisprudence has failed to indicate whether the inhalation of silica dust is or is not an ultrahazardous activity. Furthermore, after carefully reviewing the federal decision in Touchstone v. G.B.Q. Corp., 596 F.Supp. 805 (E.D.La.1984), we find that it is not persuasive authority that sandblasting is not an ultrahazardous activity.
It is clear that at this stage of the litigation, without further evidence, that we cannot determine as a matter of law, whether the risks inherent in sandblasting with silica dust can cause injury even when conducted with the greatest prudence and care or whether it is possible to protect workers from the hazardous effects of this dust. We find to correctly make this determination and analysis of the duties of PPG, Cities Service, and their executive officers to the various plaintiffs, require further development of the facts. Therefore, we reverse the trial court's dismissal of Lone Star and Pulmosan's claims against PPG, Cities Service, and their executive officers as joint tortfeasors, on the peremptory exception of no cause of action.
Accordingly, for the foregoing reasons, the trial court's judgment granting the various third-party defendants' peremptory exceptions of no cause of action is reversed and set aside. This matter is remanded for further proceedings consistent herewith. Costs of this appeal are assessed equally among third-party defendants in this case and in all the consolidated cases. All other *861 costs at the trial level are to be assessed by the trial court upon final disposition of this case and the consolidated cases.
REVERSED AND REMANDED.
LABORDE, J., dissents for reasons assigned.
APPENDIX
Listing of consolidated cases:
Larry J. Ancelet, Sr., et ux. v. Southern Silica of Louisiana, et al., 554 So.2d 864 (La.App. 3rd Cir.1989);
Orlean Marcantel, et ux. v. Southern Silica of Louisiana, et al., 554 So.2d 865 (La. App. 3rd Cir.1989);
Malca Perron, et ux. v. Southern Silica of Louisiana, et al., 554 So.2d 866 (La.App. 3rd Cir.1989);
Hampton Shuff, et ux. v. Southern Silica of Louisiana, et al., 554 So.2d 867 (La. App. 3rd Cir.1989);
Donald E. Manuel, et ux. v. Southern Silica of Louisiana, et al., 554 So.2d 868 (La.App. 3rd Cir.1989);
Orues P. Johnson, et ux. v. Southern Silica of Louisiana et al., 554 So.2d 868 (La. App. 3rd Cir.1989);
James R. Doiron, et ux. v. Southern Silica of Louisiana et al., 554 So.2d 869 (La. App. 3rd Cir.1989);
Ellen Baglio, et al. v. Southern Silica of Louisiana, et al., 554 So.2d 870 (La.App. 3rd Cir.1989);
Charlie Steve Lee, et ux. v. Southern Silica of Louisiana, et al., 554 So.2d 871 (La. App. 3rd Cir.1989);
LABORDE, Judge, dissenting.
These cases arise from the complaints of the plaintiffs who allege that during the course of their employment with Sline Industrial Painters, Inc. (Sline), as sandblasters and painters, they were exposed to silica particles and other toxic products which caused them to contract the disease of silicosis. Although the earliest of the plaintiff's lawsuits was filed in 1985, each of the plaintiffs alleges exposure to silica particles prior to 1976.
In their original complaints, the plaintiffs named various suppliers, manufacturers, and distributors of products and equipment used in sandblasting as defendants. Among these defendants are Lone Star Industries, Inc. (Lone Star), and Pulmosan Safety Equipment Corporation (Pulmosan). Lone Star and Pulmosan answered the petitions denying the allegations contained therein, and filed third party demands seeking indemnity or contribution against the executive officers of Sline and their insurer, Liberty Mutual Insurance Company; PPG Industries, Inc. (PPG), and its executive officers; The Hartford Accident and Indemnity Company as insurer for both PPG and the executive officers of PPG; Cities Service Company (Cities Service), and its executive officers; and the Brotherhood of Painters and Decorators, Allied Trades, Local 873.[1]
Third party defendants, the executive officers of Sline, PPG and its executive officers, The Hartford Accident and Indemnity Company, and Cities Service all filed peremptory exceptions of no cause of action, as well as other exceptions, to the third party demands of Lone Star and Pulmosan. Because the third party demands filed by Lone Star and Pulmosan in each of the suits stated identical claims against the third party defendants, the trial court consolidated the ten cases for hearing only on the exceptions. Following the hearing, the trial court rendered a written opinion on December 30, 1987, in which it sustained the exceptions of no cause of action filed by the third party defendants. Judgment was entered on February 19, 1988, and Lone Star and Pulmosan have appealed.
After thoroughly reviewing the legal issues, and the decision of the trial court, I find no error in the trial court's decision. The trial court wrote a thorough opinion *862 analyzing the issues. Accordingly, I would affirm the judgment below and annex the reasons assigned by the trial court. I respectfully dissent.

"EXECUTIVE OFFICERS EXCEPTION OF NO CAUSE OF ACTION
The issue is simply whether this court should follow the holding of the U.S. Court of Appeals, Fifth Circuit, in Ducre v. Executive Officers of Halter Marine, Inc., 752 F.2d 976 (5th Cir.1985). If that decision is followed, the position of the executive officers prevails. If the decision is not followed, the exception will be overruled. The facts and legal issues are the same. However, third party plaintiffs contend that Ducre is erroneous and should not be followed. Both sides agree that this court is not bound by Ducre.
On the question of tort indemnity, the court in Ducre discussed Civil Code Article 2106 (now incorporated into Civil Code Article 1804) as the codal source of indemnity. Citing Truxillo v. Gentilly Medical Building, Inc., 225 So.2d 488 (La.App.1969) and Appalachian Corporation v. Brooklyn Cooperage Company, 151 La. 41, 91 So. 539 (1922), the court stated that whether the debt spoken of in Civil Code Article 2106 "concern(s) only one of the co-obligors" in tort is resolved by determining whether the fault of one tort feasor is actual and that of the other merely constructive or technical. In such a context, an action for indemnity would lie in favor of the tort feasor who was merely constructively at fault. But indemnity is not available in favor of a tort feasor whose fault is active or actual.
In this instance, similar to Ducre, the third party plaintiffs have been charged with negligence, with strict liability in the manufacture, distribution and sale of defective products and in failure to warn. The Ducre court stated that any form of fault forming the basis of the third party plaintiffs' liability, whether sounding in negligence or in "products liability", would be active and not purely technical or constructive. Therefore, indemnity was not available. I agree.
The third party demands state no cause of action against the executive officers for indemnity.
The court in Ducre also held that the manufacturers had no claim against the executive officers for contribution. In doing so it relied upon Brown v. New Amsterdam Casualty Company, 243 La. 271, 142 So.2d 796 (1962), stating:
"It is firmly established that a tortfeasor's cause of action for contribution against its cotortfeasor, where they are liable in solido, arises, not when the tort occurs, but when judicial demand by the injured party is made upon one of the cotortfeasors...."
The court quoted from Brown as follows:
"... the rights and obligations as between the joint wrongdoers do not ... arise [at the time the injured party's right arises], because they are not created by virtue of the commission of the tort and of the provisions of Revised Civil Code Article 2315 [the basic codal source of negligence liability]. Rather, they spring from the principle of contribution, enunciated in Article 2103 and our jurisprudence, ... And it is only after judicial demand has been made on one of two or more solidarily obligated tort feasors that he can have any possible interest in seeking contribution."
Brown has been cited on numerous occasions by our state appellate courts.
Prior to 1976, R.S. 23:1032 permitted a negligence action by an employee against the executive officers of his employer. The 1976 amendment bars such claims. In the present cases, as in Ducre, the plaintiffs allege exposure to the silica particles prior to 1976. These suits were not filed until subsequent to 1976. Under the above stated principle, the third party plaintiffs' cause of action for contribution against the executive officers did not arise until the manufacturers were sued. At the time judicial demand was made upon them by the *863 injured parties, the claims for contribution were barred by R.S. 23:1032. See Waggoner v. Kellogg-Moore Oil Co., 375 So.2d 197 (La.App.1979).
Counsel for third party plaintiffs contend the Ducre court erred in applying the above stated principle and in ignoring the principle of subrogation on which they contend the right to contribution is based, citing Harvey v. Travelers Insurance Co., 163 So.2d 915 (La.App.1964), and other cases. They contend the plaintiff employees have a claim against the executive officers and that since the third party plaintiffs stand in the shoes of the plaintiffs under the principle of subrogation, the third party plaintiffs have a cause of action against the executive officers.
Pulmosan was a party defendant in Ducre. The law firm which represented Pulmosan in that case also represents Pulmosan in this case. Counsel in his brief informs the court that the issue of subrogation was raised in oral argument before the court in Ducre. I cannot presume to know why that court chose not to discuss the issue, but the fact remains that it listened to the argument, obviously rejected it and chose to follow the principle enunciated in Brown.
Third party plaintiffs' argument requires two assumptions1) that the plaintiff employees have a claim against the executive officers, and 2) that third party plaintiffs stand in the shoes of the plaintiff employees.
I am not prepared either to agree or disagree with the first assumption. Plaintiffs have not sued the executive officers. That issue is not directly before the court, but at some future time it may arise.[2] It would not be appropriate for this court at this time to attempt to decide the question without either the plaintiffs or the executive officers having had a chance to be heard. The court would further point out that the Ducre court noted that the law of Louisiana is in a state of flux as to when a victim of a latent disease is considered to have sustained damages so as to give rise to a cause of action.
The second assumptionthat third party plaintiffs stand in the shoes of the plaintiffsis supported by Harvey and other cases. However, there are at least two Louisiana cases in which the third party plaintiff in seeking contribution from an alleged co-tort feasor did not "step into the plaintiff's shoes." Ferguson v. [Lankford], 374 So.2d 1205 (La.1979) and Lanier v. T.L. James and Company, 148 So.2d 100 (La.App.1962).
In Ferguson, the court held that plaintiff's claim against the doctor had prescribed, whereas any claim for contribution by the hospital against the doctor would not have prescribed.[3] If the hospital stood in the plaintiff's shoes, its claim for contribution would have prescribed. If the defendant in Lanier had stepped into the plaintiff's shoes, it would have been allowed to maintain its contribution claim, but was not permitted to do so.
It would appear, therefore, contrary to the contention of Pulmosan and Lone Star, that a third party plaintiff seeking contribution does not always step into the plaintiff's shoes. It may have greater or lesser rights than does the plaintiff, depending upon the circumstances of the case.
The point of all this discussion is that third party plaintiffs have failed to satisfy this court that the holding in Ducre is clearly wrong, and in the absence of such a showing, Ducre will be followed.
Accordingly, the exceptions of no cause of action of the executive officers will be sustained ... Admittedly, the cases on contribution cause this court some confusion, but if Ducre is wrong, third party plaintiffs *864 will have the opportunity of having our appellate courts say so and correct this decision before trial on the merits.
CITIES SERVICE AND PPG EXCEPTIONS
Third party plaintiffs allege that PPG and Cities Service were the statutory employers of plaintiffs. Alternatively, in the event PPG and Cities Service are not plaintiffs' statutory employers, then they allege that these third party defendants are responsible to third party plaintiffs for indemnification and/or contribution on the grounds "that the activities performed by Sline were ultra hazardous, and PPG [and Cities Service] undertook direct control and authority over the promulgation and enforcement of Sline's safety procedures as they related to sandblasting." Subsequently in their petitions, third party plaintiffs list the acts of negligence of Cities Service and PPG. These alleged acts are restricted in substance to failure to provide Sline's employees with appropriate respiratory protective devices, failure to promulgate and enforce safety programs, failure to keep abreast of information concerning hazards generated by crystalline-free silica, etc., failure to warn of hazards and failure to instruct.
If they are statutory employers, they are immune from tort liability under the provisions of R.S. 23:1032, and no cause of action has been stated.
The alternative contention also fails to state a cause of action. Third party plaintiffs allege that the companies failed to take affirmative action to prevent the plaintiffs from being injured by Sline's allegedly unsafe work practices. However, absent an employment relationship, a principal is not liable for injuries caused by the acts of an independent contractor, and owes no duty to the contractor's employees either to insure their safety or to discover or correct hazardous conditions created by the contractor. Kent v. Gulf States Utilities, 418 So.2d 493 (La.1982); Stoute v. Mobil Oil Corporation, 297 So.2d 276 (La.App.1974).
If the companies undertook operational control of Sline's activities, then a master-servant relationship existed which would entitle the principal to employer[4] immunity.
The third party petition fails to state a cause of action against either Cities Service or PPG.
The grounds of the objections of the executive officers, Cities Service and PPG cannot be removed by amendment of the petition, and, therefore, the third party actions against these parties will be dismissed. Costs to be assessed equally to third party plaintiffs.
A formal decree will be signed when presented.
This decision renders moot the pending declinatory exception of lack of jurisdiction over one or more executive officers."
NOTES
[1] The record shows that the plaintiffs in the ten cases have now amended their petitions to add the executive officers as defendants. Even if they had not amended their petitions, their petitions all allege exposure to silica particles from 1941 through 1985, and do not exclude the possibility that they have a cause of action for negligence against the executive officers which arose prior to 1976.
[1] The Brotherhood of Painters and Decorators, Allied Trades, Local 873 was not made a party to this appeal.
[2] As the majority notes the plaintiffs in the ten cases have now amended their petitions to add the executive officers as defendants.
[3] For the sake of completeness, we note that subsequent to the Ferguson case, the Medical Malpractice Act was amended to provide for suspension of prescription against non-qualified health providers (like the doctor in Ferguson) who are solidarily liable with at least one qualified health care provider. The fact that the 1981 amendments legislatively overruled the Supreme Court's holding in Ferguson does not affect the trial court's analysis of the contribution issue in the instant case.
[4] The trial court did not address the issue of PPG's and Cities Service's liability based on the ultrahazardous nature of sandblasting. In Touchstone v. G.B.Q. Corp., 596 F.Supp. 805 (E.D.La.1984), the court held that the fact that safety can be achieved in sandblasting meant that it is a non-ultrahazardous activity. Appellants' third party demands allege no facts which would provide a basis for characterizing sandblasting as an ultrahazardous activity. Thus, we agree with the court in Touchstone that, as a matter of law, sandblasting is not an ultrahazardous activity.